M. L. FULLER v. CRAIG GRIFFITH and C. D. KNAPP, Appellants.

1 Fraudulent Conveyance: Taking Absolute Deed as Security. The taking of a deed to secure a debt amounting to less than half the value of the property deeded, and claiming absolute title thereunder, deed being made when grantee knows grantor to be in debt, is a badge of fraud, and the deed is fraudulent against the judgment creditors of grantor.

5 Same: No Actual Fraud. Where such a conveyance is not shown to be actually fraudulent, grantee may have a lien for his debt.

SAME. If such a conveyance, between relatives, were absolute, it would be deemed voluntary against creditors, as to the difference between the value of the land and the amount paid.

7  Subsequent Advances can not be "tacked" against the judg-
8  ment creditor where no agreement is made *at any time* that the con-
10 veyance shall be security for such advances.

11  Accruing Costs : How Taxed. The statute allows the success-
ful party to recover accruing costs as well as others.

*Appeal from Adair District Court.*—HON. A. W.
WILKINSON, Judge.

SATURDAY, OCTOBER 6, 1894.

SUIT in equity to set aside a conveyance of real
estate for fraud. From a decree in favor of plaintiff
both parties appeal. The defendant Knapp, having
first perfected his appeal, will be called the appellant.
—*Affirmed:*

*Sayles & Hinkson* for appellant.

*Story & Gaines* for appellee.

DEEMER, J.—On the sixth day of November, 1891,
the plaintiff obtained a judgment in the district court
of Adair county against the defendant Craig Griffith
for the sum of eight hundred and seventy-six dollars
and costs, and on the same day caused an execution to
issue thereon, which was returned "No property found."
The judgment was founded on a note executed by said
defendant to the plaintiff to cover the balance due on
another note for one thousand, five hundred dollars,
given by Griffith to plaintiff, the consideration of which
formed the purchase price which Griffith paid for the
property which is sought to be reached by this action.
On the twenty-eighth day of January, 1889, the
defendant Griffith conveyed by warranty deed to his
codefendant, Knapp, the property in controversy. It
is alleged in the petition that this conveyance was
without adequate consideration, and was made with
intent to hinder, delay, and defraud the plaintiff in the

collection of her claim. There was a decree declaring the conveyance fraudulent, but giving defendant Knapp a first lien upon the property to the amount of four hundred and twenty-five dollars. The evidence establishes the following facts: Prior to the conveyance in question, defendant Griffith was the owner of the property, and had been using and occupying it, with his family, as a homestead; but as we have already said, the debt on which the judgment was rendered was contracted prior to the acquisition of the property by Griffith, and the note was given as evidence of money loaned by plaintiff or her husband to defendant Griffith, to enable him to purchase the property. The only consideration for the deed from Griffith to Knapp was the sum of four hundred and twenty-five dollars, the same being an indebtedness of Griffith on which defendant Knapp was a surety, which indebtedness Knapp subsequently paid. The property in question was worth from one thousand to one thousand, two hundred and fifty dollars at the time of its conveyance, and was all the property Griffith then had. Griffith is a nephew of Knapp, and was a member of his family from boyhood up until his marriage, which occurred about the time he purchased the property. Subsequent to the conveyance of the property, Griffith induced Knapp to invest eight hundred and fifty-five dollars in a boot and shoe business, the same to be under the charge and control of Griffith's father; Griffith agreeing that he would make good any loss Knapp might sustain in the business. Knapp claims to have lost two hundred and eighty-seven dollars in the transaction. Subsequent to this, Knapp advanced three hundred and fifty dollars to Griffith, and he claims that these amounts were advanced upon the strength of, and should be considered a part of, the consideration. We are satisfied from the testimony that the conveyance, although absolute in form, was at the time it was executed intended

by the parties as security for the four hundred and twenty-five dollar note on which Knapp was a surety, and that it was in fact a mortgage, although both Griffith and Knapp claim it was an absolute deed. Knapp has at all times treated the property as if he were the absolute owner of it, and insists in his answer and upon the trial, that the conveyance was absolute. The facts that the original consideration, as claimed, was but four hundred and twenty-five dollars, and the value of the property more than one thousand dollars; that Knapp claims to have made the subsequent advances partly on the strength of the conveyance; and the further fact that, even after the conveyance was made, Griffith paid some of the interest on the bank notes—are circumstances which clearly demonstrate that the conveyance was intended as security, notwithstanding the denials of the defendant. When the conveyance was made, Knapp knew of the indebtedness of Griffith to the plaintiff.

There was, according to defendant's testimony, a secret agreement, by which Griffith was to have the property back upon reimbursing Knapp the amount he had in the land, which continued in force until about September, 1891.

Having settled the facts, we now turn to the law of the case. It is familiar doctrine that a deed, absolute on its face, may be shown to be a mortgage, and that the relationship of mortgagor and mortgagee may be thus established; yet, as to creditors, the transaction must be clear and clean as a conveyance for permanent ownership. There should be no disguise, nor dissembling, nor falsehood. Wait, Fraud. Conv., section 238; *Smith v. Onion*, 19 Vt. 427; *Baker v. French*, 18 Vt. 460. Such a conveyance is a badge of fraud, which may be removed by evidence of an honest intent. *Ross v. Duggan*, 5 Col. 100; *Stevens v. Hinckley*, 43 Me. 440; *Moore v.*

*Roe*, 35 N. J. Eq. 90. "It may be noted, with reference to the law upon this subject, that an absolute conveyance by way of security, affords a convenient and tempting cover for fraud upon creditors; and the tendency to regard transactions of this kind with suspicion should be encouraged." Wait, Fraud. Conv., section 238. The courts of Alabama, New Hampshire, and California, hold such conveyances *ipso facto* void as against creditors, without reference to the intent. See *Sims v. Gaines*, 64 Ala. 392; *Ladd v Wiggin*, 35 N. H. 426; *Chenery v. Palmer*, 6 Cal. 122. We are not inclined to adopt the more stringent rule, but are content with the doctrine that such conveyances are a badge of fraud, but will be upheld if no fraud was intended. Yet, if there is any disguising of the transaction by the parties, if the grantee or mortgage claims it to be an absolute conveyance, where a sale was intended only as security, if he conceals the true nature of the convey ance, then it will be held to be fraudulent.

This is the doctrine announced in *Baker v. French*, 18 Vt. 460; *Bank v. Godfrey*, 23 Ill. 604; *Thompson v. Pennell*, 67 Me. 162, and many other cases. The reason for the rule, no doubt, is not only that creditors are deceived by such conduct, but that such concealment is a secret reservation of a valuable right in the property which the creditors might reach. We are not prepared to say that fraud was in fact intended in the making of the conveyance in question, but, under the rule we have announced, it was fraudulent in law, because the defendant Knapp has at all times, even up to the last moment, when he spoke on the subject, contended that the conveyance was an absolute one, when, as we have already seen, it was intended only as security for the four hundred and twenty-five dollars advanced. There is another phase of the case, which, when considered, leads us to the same result. The conveyance was made

to secure the four hundred and twenty-five dollars paid by defendant Knapp as security for Griffith. This was the sole and only consideration for the conveyance at the time it was made, under any version of the testimony. Now, defendant Knapp does not claim that he advanced the money to be put into the boot and shoe business because of a promise to give him the land, nor did he subsequently advance the three hundred and fifty dollars because of any agreement that the land should stand as security for that amount. The loss in the shoe business came after the conveyance was made, and Knapp says, in terms, "It constituted no part of the consideration for the property." With reference to the three hundred and fifty dollars, Knapp says: "The three hundred and fifty dollars that I subsequently advanced to him when he was in Clarinda, I advanced to him in the same way. I sent him the draft in February, 1890; I was under no obligations to do it." There is no proof of any agreement between the parties that the conveyance should stand as security for these subsequent advances. Defendant Knapp further says, with reference to these advances: "The property I considered as worth that, and he was a member of my family, and I did not want to take any advantage of him; at least that is the way I felt. I was willing to give him the full value of the property."

Unless there was an agreement between the parties that the conveyance should stand as security for these future advances, there is no good reason for a court of equity to allow them to be "tacked" as against the claim of plaintiff. There are no equities in defendant, by reason thereof, superior to plaintiff's rights. Jones, Mort., sec. 360. We do not mean to hold that the parties might not have made a subsequent agreement with reference to future advances, although not contemplated at the time the conveyance was made, which would have been valid and binding

against plaintiff until he obtained his judgment and a lien upon the land. What we do mean is, that there is not sufficient proof of such an agreement.

There is another proposition of law, which to our minds is fatal to defendant's contention on this appeal. Let it be conceded that the conveyance was, as the defendant claims it, an absolute one, for the consideration of four hundred and twenty-five dollars, without any agreement for future advances. If this be true, then defendant Knapp became the absolute and unqualified owner of the land, and if he became the owner in fee it would be difficult to see how he could take a mortgage upon his own land for the subsequent advances he claims to have made Griffith. The statement of the proposition is the strongest argument that could be made, and needs no citation of authorities to sustain it. If, then, the conveyance was absolute for four hundred and twenty-five dollars, the difference between the price paid and the actual value of the property, is so apparent and great that the conveyance will be regarded as voluntary to the extent of that difference. *Strong v. Lawrence*, 58 Iowa, 55, 12 N. W. Rep. 74; *Stamy v. Laning*, 58 Iowa, 662, 12 N. W. Rep. 628; *Keeder v. Murphy*, 43 Iowa, 413; *Gaar v. Hart*, 77 Iowa, 597, 42 N. W. Rep. 451. The consideration for the conveyance was four hundred and twenty-five dollars, and the actual value of the land was at least one thousand dollars. To the extent of this difference, then, the conveyance was voluntary.

II. Plaintiff appeals from the decree, and contends that the court erred in giving defendant Knapp a first lien of four hundred and twenty-five dollars upon the land. There would be much of merit in his contention had we found the conveyance tainted with actual fraud; but, as we do not so find, the policy of the law is to protect the purchaser or mortgagee to the amount of money actually paid or advanced by

him, where the mortgage or deed is attended with suspicious or inequitable circumstances, or is only constructively fraudulent. *Boyd v. Dunlap*, 1 Johns. Ch. 478; *Keeder v. Murphy*, 43 Iowa, 413. The last case is exactly in point.

III.   Complaint is made of the action of the court in taxing the costs of the suit and the accruing costs to the defendant—more particularly the accruing costs. While this may have been a proper case for the apportionment of costs, such an order was not asked and is not contended for here.   The statute provides that costs may be recovered by the successful party against the losing one.   This includes the accruing as well as the original costs.   Defendant made defense to the action, was defeated, and should pay the costs.   Plaintiff ought not to be compelled to bear them.

IV.   Defendant also asks us to tax the costs of appellee's amended abstract to the appellee.   We think this abstract contains matter material to the proper determination of the cause omitted by appellant from his abstract, and we must refuse to grant the motion. The decree of the district court is, in all respects, AFFIRMED.