H. S. ENGLAND, Appellant, v. W. C. ENGLAND.

DEED HELD NOT TO BE A MORTGAGE.

*Appeal from Mahaska District Court.*—HON. D. RYAN, Judge.

THURSDAY, JANUARY 17, 1895.

Suit in equity to have an absolute deed made by plaintiff to defendant declared a mortgage, for an accounting, and other equitable relief. From a decree dismissing the plaintiff's petition, he appeals.—*Affirmed.*

*Seevers & Seevers, Daniel Davis,* and *Liston McMillen* for appellant.

*J. F. & W. R. Lacey* for appellee.

Deemer, J.—Plaintiff and defendant are brothers. In the year 1878 the defendant lived in Dundas, in the state of Ohio, and was there engaged in the general merchandising business. The plaintiff lived upon the land which is the subject of this litigation, and was engaged in farming. Plaintiff fell behind in his business operations, and in the spring of 1878 was largely involved. He had mortgaged his land for three thousand dollars to the Aetna Insurance Company, and was also indebted to the defendant in the sum of one thousand dollars, which was also secured by mortgage upon the land. He was also indebted in other considerable amounts, which were unsecured. In the early part of the year 1878 plaintiff went to Ohio, to see his brother (the defendant), as he (plaintiff) says, to make a loan from him, and, as the defendant says, to try and induce him to buy the land· but whichever is the true version,—and this is a matter for

our determination,—he returned without fully consummating the deal. Soon after his return home, plaintiff executed a deed for a large part of the land, in which his wife joined, and sent the same to his brother in Ohio. Defendant at this time refused to accept the deed, and, after some correspondence between the parties, defendant came to this state, and accepted it. Shortly thereafter, and during the same year, plaintiff conveyed the remainder of the land to defendant. The deeds were each deeds of bargain and sale, with covenants of general warranty. The first one purports to have been executed and acknowledged on the fourteenth day of March, 1878, and was filed for record April 25, 1878; and the second was executed and acknowledged on November 23, 1878, and was filed for record January 4, 1880. Defendant did not take possession of the farm until about March 1, 1879. Plaintiff says that he (plaintiff) was to hold the farm during the year 1878. In March, 1879, however, the defendant removed from Ohio to this state, and took possession of the farm, and has ever since been in the possession, occupancy, and use thereof. It is claimed on the part of the plaintiff that the whole transaction between him and defendant was simply a loan made by him of defendant and that the deeds, while absolute in form, were in fact intended as security only; that defendant, when he took possession of the farm in 1879, also took possession of the personal property thereon, and agreed to apply the rent of the place, and the proceeds arising from the sale of the personal property, upon the amount of the loan; that the reasonable rental value of the place, together with the proceeds of the personal property, amounted to much more than the original loan with interest, and that he is entitled to decree declaring the legal title in the land to be in him. On the other hand, the defendant contends that the deeds are just what they purport to be,—absolute conveyances for the transfer of the land; that he purchased the same for the sum of seven thousand dollars, and paid the full consideration therefor, and that plaintiff has no right or title to the land. In support of plaintiff's contention, we have his testimony, certain admissions said to have been made by the defendant, the value of the land as compared with the considerations said to have been paid, and some other circumstantial matters tending to confirm him; while, on the other hand, we have the plaintiff's admissions, the correspondence between the parties, the deeds themselves, and some other circumstances which tend strongly to corroborate the defendant, as well as the testimony of defendant, defendant's wife, and his brother. An attempt was also made by each party to impeach the other, and numerous witnesses were introduced, who gave to each bad reputations for truth and veracity, and imputed to them general moral turpitude. It would be useless to set out all this conflicting testimony. It is sufficient to

state·some of the more salient points, and·announce our··conclusions
therefrom.

It is so well settled as to be among the fundamentals of the law
that, while a deed absolute on its face may be shown to be a mort-
gage, yet the proof to establish it must be clear, satisfactory, and
conclusive. No citation is needed in support of the rule. Equally
well settled is it that loose and random admissions, made by the
grantee, after he has accepted a conveyance absolute on its face, to
the effect that the conveyance was but a mortgage, are to be received
with great caution. Upon looking to the testimony, we find that
all the correspondence between the parties,—of which there was
much,—and all the written evidence of the transaction, are squarely
against plaintiff's claim. All these indicate the transaction was a
sale, and not a mortgage. This the plaintiff admits. But he insists
the reason for this was that he intended to deceive, if not to defraud,
his creditors, and that the letters and written documents are wholly
fictitious. If this be true, it does not place plaintiff in a very envi-
able position in court of chancery. We are inclined to believe, how-
ever, that the transaction was as defendant claims it to have been,
and as all the written evidence shows it was, a bona fide sale of the
property to the defendant. True, there is a vast quantity of evidence
tending to show that the land was worth quite an amount in excess
of the consideration paid. But as against this we have testimony
that other land in the country at and about the time of the transac-
tion was selling for but little, if any, more than defendant paid for
the tract in suit. Again, defendant has not conducted himself as a
mere mortgagee of the land. Shortly after the transaction, defend-
ant left his home, in Ohio, and moved upon the land in question, and
has put quite expensive improvements upon it, and otherwise treated
it as an owner. He has held possession ever since, has paid the
taxes, collected the rents, and claimed to be the owner of the land.
Plaintiff, at the time of the transaction, represented to various par-
ties that he had sold his land to his brother, and to no one has
he claimed any different, except perhaps to his brother, until the
commencement of this suit. It is passing strange if, as he claims,
his brother was simply to hold and use the land until he was repaid
the amount of money advanced, that plaintiff should let the matter
rest from 1879 to 1892, in view of the feeling existing between these
brothers, without any attempt to enforce his rights. According to
plaintiff's present claim, the amount advanced has been many times
repaid from the use of the land and from the personal property
turned over to defendant, and yet, notwithstanding a very bitter
feeling existing between these men for years, plaintiff brings no
action until the year 1892. We do not overlook the admissions said
to have been made by the defendant with reference to his title to
the land. Some of them may be explained upon a theory entirely
consistent with defendant's claim. Others are manifestly untrue,

and all are mere random statements, made long after the transfer, and not of a kind which, to our minds, justifies a decree such as is asked by plaintiff. Many questions of law are discussed in the arguments of counsel which, in the view we have taken of the case, are unimportant, and we do not determine them. We are of the opinion that plaintiff has failed to make out his case by the quantity of proof required, and the decree of the District Court is *affirmed*.