G. W. RIDINGS AND F. M. RIDINGS, Appellants, v. THE MARENGO SAVINGS BANK, MARENGO, IOWA, Appellee.

**Mortgages:** ABSOLUTE DEED AS A MORTGAGE: BURDEN OF PROOF: EVIDENCE. To declare a deed absolute in form with covenants of warranty to be a mortgage, the evidence that it was given as

security simply must be clear, satisfactory and convincing; the important questions being whether there was a continuing obligation on the part of the grantor to pay a debt which it is claimed the deed was made to secure; the relative value of the land as compared with the debt; how the parties treated the conveyance; the form of the written evidence of the transaction; and the character of the testimony relied on to show that the deed was accepted as security. In this action the evidence is held insufficient to sustain the plaintiff's contention that the deed in question was given merely as security.

*Appeal from Iowa District Court.*—Hon. R. P. Howell, Judge.

Thursday, March 10, 1910.

Suit in equity to have a deed declared to be a mortgage, for an accounting, and fixing a period for redemption. The trial court dismissed the petition, and plaintiffs appeal.—*Affirmed.*

*Thos. H. Milner* and *Thos. Stapleton,* for appellants.

*C. Hedges* and *Popham & Havner,* for appellee.

Deemer, C. J.—Plaintiff G. W. Ridings is and at all times material to our inquiry has been a resident of the city of Chicago. The other plaintiff, F. M. Ridings, was a resident and citizen of Iowa county, this state. The latter was a customer of the defendant bank and a large borrower therefrom. Shortly before the deed in question was made, F. M. Ridings was largely indebted to the bank, both on notes and overdrafts, and the cashier of said bank was anxious to get these loans paid or secured and the account put on a different basis. It is claimed that G. W. Ridings, who is a brother of F. M. Ridings, was asked to come to Marengo, Iowa, to help straighten out F. M.'s account; that he went there in March of the year 1903, and with the cashier of the bank made an arrangement whereby, among

other things, he, G. W., was to execute and deliver to the bank an absolute deed for certain real estate in the state of North Dakota as security for the indebtedness owing the bank by F. M. Ridings. It is claimed that it was the thought of all parties in interest that with this assistance F. M. Ridings could pull through, pay his indebtedness to the bank, and that, when this was done, the North Dakota land should be redeeded to G. W. Ridings. Accordingly on March 26, 1903, G. W. Ridings made, executed, and delivered to defendant a warranty deed for a section of land in North Dakota. This deed was duly recorded in the proper county April 6, 1903. After the making of the deed, the south half of the section was conveyed by the bank to a party at Rowley, Iowa, for a stock of merchandise, and F. M. Ridings or the two plaintiffs under the name of Ridings Bros. took possession of the stock of goods and handled and disposed of the same, accounting to defendant for the sum of $3,500 on account thereof. It is contended that the deed of the North Dakota land to the bank was intended as security for $7,000 of the indebtedness of F. M. Ridings to the bank; that the sale or exchange of the south half of the land was made by the Ridings, and that the bank received $3,500 of the proceeds of the goods received for the land; that but $3,500 of the original debt which the deed was made to secure remains unpaid; and that upon an accounting a considerably less sum is due the bank. An accounting is asked and a decree declaring the deed to be a mortgage and plaintiffs given the right to redeem the land upon payment of the amount found due. In brief, this is the claim made for appellants.

Defendant denies that the deed was intended as security, and insists that it should not be declared to be a mortgage. It says that the land was taken in satisfaction of $7,000 of the indebtedness of F. M. Ridings to the bank, that it was taken at practically the full value of the land, and that the only collateral agreement with reference there-

to was that plaintiffs should have the management of the land and the right to sell the same until March 1, 1904. If in the meantime the land was sold for more than the bank gave for it, the excess should be credited upon any other account which F. M. Ridings at that time had, and, if there was no indebtedness at that time, the excess was to be paid to the Ridings or to F. M. Ridings as his commission for the sale of the land. Thus a square issue is presented regarding the nature of the original transaction. The deed being absolute in form with covenants of warranty, the burden is upon plaintiff to show by clear, satisfactory and convincing evidence that, although absolute in form, the conveyance was intended to be a mortgage. *Hyatt v. Cochran*, 37 Iowa, 309; *Robertson v. Moline Co.*, 106 Iowa, 414; *England v. England*, 94 Iowa, 716, and cases cited.

And in arriving at a proper solution of the issues presented the most important questions to be considered are: (1) Was there a continuing obligation on the part of the grantor to pay a debt which it is claimed the deed was made to secure? (2) What was the value of the land as compared with the indebtedness which the deed was made to extinguish or secure? (3) How have the parties treated the conveyance? (4) In what form are the written evidences in the transaction? (5) What sort of testimony is relied upon to show that the deed was intended for and accepted as security for a loan or existing indebtedness? These propositions are so fundamental that there is no need of citing authorities in their support. Indeed, the only serious questions in the case are of fact. We have read and reread the record with care and from a perusal thereof conclude: (1) Just prior to the making of the deed F. M. Ridings was indebted to the bank in the sum of nearly $44,000, and the officers of the bank were anxious to have this indebtedness reduced, paid, or secured. G. W. Ridings authorized his brother, F. M., to use the North Dakota land in adjusting this indebtedness. F. M. appeared be-

fore the cashier and the board of directors, and we are satisfied that an arrangement was made whereby the bank was to take the land which was then mortgaged to secure a debt of over $5,000 at the sum of $7,000, and that F. M. should be given credit for that amount upon the books of the bank, the bank assuming the mortgage upon the land. As F. M. Ridings was then insisting that the land was worth more than the bank gave for it, it was arranged that he and his brother should have the right to sell the land at any time within one year, and, if they sold so as to net the bank more than the $7,000, F. M. Ridings was to have credit for the overplus upon his other indebtedness to the bank, and, if he was not indebted to the bank at that time, the overplus should be paid to the Ridings as a commission for the sale of the land. We are constrained to hold under the testimony that $7,000 of F. M. Ridings' indebtedness to the bank was absolutely satisfied by the conveyance of the land.

Plaintiffs' testimony as to the debt secured or intended to be secured is very uncertain and unsatisfactory. In their pleadings and according to some of the testimony the deed was given to secure all of F. M. Ridings' indebtedness. If that be true, there is no need to further consider the case, for the reason that according to the undisputed testimony Ridings' indebtedness at this time amounts to many times the present value of the remaining land after giving them credit for everything to which they, under any theory of the case, would be entitled. The bank treated the deed as absolutely extinguishing $7,000 of F. M. Ridings' indebtedness, and, as no sale was made by either of the plaintiffs, except as part of the land was exchanged for the property at Rowley, their rights to this remaining property have been fully extinguished. According to the better testimony the land was not worth more than the bank agreed to give for it. G. M. Ridings himself testified that, when the deed was made to the bank, the land was not worth to exceed $12,500. This is what the bank took it for, and there is nothing in

the value of the land which indicates that the bank took it as security.  Indeed, the contrary is indicated.

The conduct of the parties after the execution of the deed is strongly relied upon by plaintiffs, and this is the only thing in the case which gives any color to their claims. When it is remembered that plaintiffs or F. M. Ridings were given the management of the farm and one year within which to sell the land, most, if not all, of the circumstances relied upon by plaintiffs as showing that the deed was intended as a mortgage become clear, and are not inconsistent with the thought that the conveyance was intended as an absolute one.  It is true that plaintiffs had the management of the land for one year, and that they received the rentals for the years 1903 and 1904, but, as plaintiffs represented to the bank that the land was wild and unimproved and none of the officials knew anything to the contrary, the fact that plaintiffs received the rentals for the years stated should not be regarded as controlling.  In a letter written by F. M. Ridings to the cashier of defendant bank under date of March 15, 1905, he stated: "I understood that up to March 1, 1905, we had exclusive sale and management of the land referred to, and after March 1st the management went to you, and, unless I hear to the contrary at once, will understand that you want us to push a sale or trade of this property as rapidly as possible.  It would be only natural for us to await your advice and instructions after March 1st.  We must have some idea as to your wishes in the matter, viz.:  If you will trade for flat property—residence or store buildings, price of land, etc.— we must have some outline in the matter."

We have already referred to the exchange of the south half of the section of land.  That was negotiated by the plaintiffs or by F. M. Ridings, but the deed was, of course, made by the defendant bank.  The title to the property received in the trade was taken in the name of the bank, but plaintiffs took possession of the goods received, and finally

closed them out, the bank making a bill of sale of the goods to the purchasers. In a letter written to the bank of Rowley which was the intermediary between these parties, Henderson, the cashier of the bank, wrote that the bank owned the entire section of land. The deed to the south half of the section was made June 8, 1904, and on July 7th of the same year the bank made a bill of sale of the goods received in exchange for the expressed consideration of $3,-888. Although the business connected with the handling and selling of this stock of goods was conducted by plaintiffs under the name of Ridings Bros., they did business with a bank at Rowley, and finally and fully accounted to the defendant bank. It seems that Ridings was allowed something like $385 as his commission on this transaction, and that the bank received on account of this deal approximately $3,500; about one-half of the mortgage indebtedness against the entire section also being taken care of. The fact that the bank received net approximately $3,500 for half the land and a release of substantially one-half the mortgage indebtedness, and the further fact that Ridings received the remainder of the returns growing out of the exchange, is quite significant. The written evidence of the transaction, the entries upon the books of the bank, the correspondence between the parties, and their conduct generally with reference to the land, save as heretofore indicated, show that the transaction was as defendant claims it to have been. It is true that F. M. Ridings and the then cashier of the bank testify that the deed was taken as security, and was not intended to be an absolute conveyance, but the entries made by the cashier upon the books of the bank, the correspondence between the parties, and their subsequent dealings indicate that the deed was taken as an absolute conveyance, and that the plaintiffs had no other rights with reference to the property after the deed was made than to manage it for one year and within that period to sell it,

securing to themselves the advantage of any price they might obtain over and above $18 per acre.

The testimony adduced by plaintiffs is not of that satisfactory character which is required in such cases. Even if G. W. Ridings were present when the transaction was consummated, which is very doubtful to say the least, and we take his testimony as to the agreement had at that time, we should be constrained to hold that plaintiffs are not entitled to the relief demanded or to any other relief which would be of any advantage. G. W. Ridings says that the deed was given as security for all of F. M. Ridings' indebtedness. If that be true, then, as it appears without contradiction that F. M. Ridings is now indebted to the bank for a sum very much greater than the value of the north half of the land, and there is no offer on plaintiffs' part to take up the whole of this indebtedness, but merely to pay $3,500 or less of the claim against F. M. Ridings, they are not entitled to the relief demanded.

We are satisfied with the decree of the trial court, and it is *affirmed*.