ELIZA E. HEMSTED, ROBERT HEMSTED, ALTA M. WEAVER and IDA B. DUNKLE, Appellants, v. LUCY HEMSTED, Appellee.

**Absolute conveyance as a mortgage:** EVIDENCE.   In this action to have an absolute deed declared a mortgage the evidence is held insufficient to warrant such a decree.   And it is also held that the consideration was not so inadequate as to raise a presumption that the deed was intended as a mortgage.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

MONDAY, MARCH 13, 1911.

ACTION in equity, wherein it is prayed that a certain deed be declared a mortgage.   The trial court dismissed the petition, and the plaintiffs have appealed.—*Affirmed.*

*Bailey & Murphy*, for appellants.

*Wade, Dutcher & Davis*, for appellee.

EVANS, J.—Plaintiff Eliza Hemsted is the widow of Frederick Hemsted, deceased, and her coplaintiffs are her

three children of the marriage. Frederick Hemsted left surviving him several children by a former marriage, of which Lucy Hemsted is one. Frederick Hemsted owned and occupied a farm of seventy-four acres in Johnson County during the later years of his life. The deed in question was a warranty deed executed by Frederick Hemsted and his wife, Eliza, in May, 1902, and conveyed such farm to the grantee with a reservation of a life estate to Frederick Hemsted during his life. The consideration was $2,200. Frederick Hemsted continued to occupy the farm up to the time of his death, which occurred in 1909. The claim that this deed was intended as a mortgage presents for our consideration only a fact question, and it will serve no purpose that we enter into a detailed discussion of the evidence, which is somewhat voluminous. After a careful reading of the evidence, we reach the same conclusion as did the trial court. Frederick Hemsted and his wife, Eliza, had not lived harmoniously together for some years prior to May, 1902. In 1894 she began an action for divorce, which was subsequently adjusted and dismissed. Some property agreement was made at the time of such adjustment. In 1901 she and her children left Frederick upon the farm, and moved to Iowa City, and made their home there, and this state of affairs continued to a time subsequent to May, 1902. Shortly prior to the execution of the deed in question, negotiations for the sale of the farm to another had been had at a proposed price of $4,200. By agreement between Frederick and Eliza, she was to receive $2,200 as her share and he was to have $2,000. These negotiations failed, and the daughter Lucy became a purchaser of the same premises, subject to a life estate in her father, for a consideration of $2,200. The $2,200 so paid by Lucy was all received by Eliza. She herself testified that she received it as "my one-third." If Lucy had paid to her father at the same time the sum of $2,000 additional and had taken the title and immediate

right of possession without the reservation of a life estate in her father, it would leave no apparent basis for the present claim.    The fact, however, that the father took his purported share in the form of a life estate of the whole premises in lieu of a present money consideration is in no sense extraordinary or improbable.    The deed contained, not only the ordinary warranty, but also the following special provision:   "The intention being to convey the absolute title to said real estate to Lucy Hemsted, subject to the possession, the use, rents and profits' thereof reserved to Frederick W. Hemsted during his natural life."

After the execution of the deed, Lucy kept the buildings on the premises insured for her own protection.    She paid all accruing taxes and made substantial repairs. Frederick Hemsted from that time continued in the possession and received all the use and rent income without incurring any further burden of expense of any kind incident to the property itself.    It is very clear under the evidence that at no time during the life of Frederick was the transaction ever questioned as being otherwise than an absolute sale to Lucy subject to life use by her father. Prior to 1906 Eliza moved back upon the farm to live again with her husband.   Some friction arose between Lucy on the one hand and her father and stepmother on the other, and some correspondence was had between the old people and Lucy's attorney.   This correspondence is too lengthy to incorporate herein, but it shows very clearly that the parties at that time deemed Lucy to be the owner of the premises under her deed.    It is entirely inconsistent with any theory of a mortgage.   It is not claimed that any note was ever executed for the $2,200, nor that any rate of interest was ever agreed upon, nor that any payment of principal or interest was ever made on the one hand or claimed on the other.    The consideration paid was not so inadequate as to raise any presumption in favor of the theory of a mortgage.   If the property were worth no more

now that it was worth then, there would be little occasion for strife between the parties. We do not overlook the fact that the evidence is conflicting. It would extend this opinion to an undue length if we were to enter upon a detailed discussion of such conflict. The foregoing is sufficient to indicate our view as to the relative weight of such conflicting evidence.

It is claimed on behalf of the other plaintiffs (children of Eliza) that they had an interest in the property of which they were ignorant at the time they executed a quitclaim deed for the purpose of carrying through the transaction with Lucy. It is claimed that at the time of the adjustment of the divorce suit in 1894 Frederick and Eliza executed a deed of the premises in question to Eliza herself for life and to her three children thereafter, and that such deed was delivered to the attorney of Eliza to be held by him during the lifetime of Frederick, and thereafter to be delivered to Eliza and her children. Such deed was not produced at the trial, and such testimony as there is upon that question is very unsatisfactory. It is claimed that Eliza never communicated to her children the facts with reference to such deed until after the commencement of this suit, and that the quitclaim deed executed by them in May, 1902, was obtained by the fraudulent concealment of such facts. If any fraud was practiced upon them, there is nothing in this record to warrant an inference that Lucy participated in such fraud. She dealt at arms' length with all these parties. She seems to have refused to go into the negotiations unless every cloud should be removed from the title. She employed an attorney to whose office the parties went for the purpose of conveyance. An abstract of title was required. A quieting title suit was brought. Quitclaim deeds were obtained from the children of Eliza, all of whom were then adults. They are in no position so far as appears

in this record to impeach such deeds as against the defendant 'Lucy.

We think ,the case was rightly decided by the trial court, and its order is therefore *affirmed.·*