McKENNEY & SEABURY et al., Appellees, v. HANNIBAL A. NELSON et al., Appellants.

No. 42701.

JULY 17, 1935.

REHEARING DENIED OCTOBER 25, 1935.

Roy E. Havens, for appellants.

Welch & Mueller, for appellees.

PARSONS, J.—This case was brought in equity to quiet title of plaintiffs, appellees herein, to 167 acres of land in Harrison county, Iowa. The land was originally owned by H. H. Irwin and Maude Michael Irwin, who gave a mortgage thereon to the Joint Stock Land Bank Company of Chicago for $13,000, being one of the regular Joint Stock Land Bank mortgages providing for payment by what is known as the amortization plan. These same parties, subsequently gave a second mortgage March 4, 1930, to H. M. Baldwin, in the sum of $1,000, due March 1, 1932, bearing interest at 5½ per cent per annum.

The defendants in this case, appellants herein, took the premises by deed from the Irwins, subject to the foregoing mortgages, not assuming any of the debt. Baldwin assigned the $1,000 mortgage on the 4th day of March, 1930, to the plaintiffs herein. There being a payment due to the Joint Stock Land Bank on its mortgage in July, 1931, there was a written agreement entered into between the plaintiffs and the defendants, providing for the payment by the plaintiffs to the Joint Stock Land Bank Company of the interest which was due May 1, 1931, in the sum of $422.50. The defendants were to execute a warranty deed to plaintiffs covering the property, to be held in escrow by the Pisgah Savings Bank under the condition that, if the defendants paid to the plaintiffs the sum advanced for the interest and amortized payment, together with 8 per cent interest from May 1, 1931, warranty deed should be returned to the defendants, and providing further that, if the defendants failed to pay this note, i.e., the Joint Stock Land Bank note, by January 1, 1932, the bank should surrender the deed to the plaintiffs as agreed upon by the parties, and that the defendants agreed to give peaceable possession of the premises not later than March 1, 1932. The deed executed by the defendants was the ordinary warranty deed warranting against all liens and encumbrances, except the mortgage of the Joint Stock Land Bank approximating $11,715.35. On March 7, 1932, the plain-

tiffs leased the premises to the defendants under written lease for the term of one year ending the 1st day of March, 1933, and providing for the payment of rent as follows: one-half the corn, two-fifths of the small grain, and $50 in cash. On the 17th day of February, 1933, the plaintiffs again leased the farm to the defendants for one year to begin March 1, 1933, and ending March 1, 1934, at the same rental. The defendants in August, 1933, told the plaintiffs they would not surrender the premises at the end of the lease, and that they intended to remain in possession of the land as long as the plaintiffs owned the premises. Whereupon the plaintiffs commenced this action to quiet title to the premises in themselves, and praying, upon the quieting of title, for a writ of removal of the defendants from and after the 1st day of March, 1934. This action was commenced on the 19th day of August, 1933.

The cause was heard, the evidence taken, the case submitted, and on the 26th of January, 1934, the court entered a decree for the plaintiffs finding that the claims of the defendants were a cloud against the title of plaintiffs. It quieted the title in plaintiffs against the defendants, and found the plaintiffs were entitled to have the defendants removed from the premises and the plaintiffs to be the absolute owners of the premises, and ordered that a writ of possession issue commanding the sheriff to remove the defendants from the premises and place the plaintiffs in possession thereof on the termination of the lease March 1, 1934.

█▮█ That the character of action brought here, i. e., to quiet title and to have a writ issue to put the plaintiffs in possession, was properly brought in equity, and equity has full power to give all relief necessary, the decision of this court lately entered so decides. Davis v. Niemann, 219 Iowa 620, 258 N. W. 761, decided February 14, 1935, and cases therein cited.

█▮█ The rule in all these cases is that, in order to hold a deed a mortgage, the evidence must be clear, satisfactory, and convincing. In this case the record shows that a written contract was entered into between the plaintiffs and the defendants prior to the making of the deed involved herein, as to the purposes of the parties making the deed. It would also require evidence which was clear, satisfactory, and convincing to hold that the written contract meant anything different than what the parties had expressed therein. In the written contract, which

was made in July, 1931, it was provided that the defendants, on their failure to live up to the contract, that is, to pay the plaintiffs an amount advanced by them for the payment made on the first mortgage to the mortgagee, should quit and surrender possession of the premises not later than March 1, 1932. As to the rule requiring evidence that is clear, satisfactory, and convincing, in order that the deed to the plaintiffs be treated as a mortgage, we have a long line of cases in the state of Iowa so holding, beginning with 7 Iowa, and running to and including 213 Iowa. These cases are: Corbit v. Smith, 7 Iowa 60, 71 Am. Dec. 431; Gardner v. Weston, 18 Iowa 533; Hyatt v. Cockran, 37 Iowa 309; Sinclair v. Walker, 38 Iowa 575; Kibby v. Harsh, 61 Iowa 196, 16 N. W. 85; Knight v. McCord, 63 Iowa 429, 19 N. W. 310; Krebs v. Lauser, 133 Iowa 241, 110 N. W. 443; Jones v. Gillett, 142 Iowa 506, 118 N. W. 314, 121 N. W. 5; Cold v. Beh, 152 Iowa 368, 132 N. W. 73; Osborne v. Osborne, 196 Iowa 871, 195 N. W. 586; Hinman v. Sage, 208 Iowa 982, 221 N. W. 472; Clark v. Chapman, 213 Iowa 737, 239 N. W. 797.

The evidence in this case relied upon to transform the arrangement for a deed to be a mortgage is not clear, satisfactory, or convincing. The defendants on their part testified that there was a first mortgage on the land of $13,000 and a second mortgage of $1,000. They had not paid any interest since fall of 1930, and no taxes had been paid since 1930, and they did not think the land could be sold for anywhere near the amount of the two mortgages; that the chances were it would not bring over $40 an acre. Taking the last estimate as the value of the land, it would be worth only about $6,400. They testify that the first mortgage was $13,000 and the second mortgage was for $1,000, taxes in arrears and interest in arrears, so it is safe to say that the mortgages and liens against the land at the time of the transaction in question aggregated fully $15,000; in other words, that the debt against the land was considerably more than twice the value of the land. So, at the time this agreement was entered into, the first mortgage being to the Joint Stock Land Bank, all this undoubtedly could have been taken into the court and a receiver promptly appointed to take charge of the premises, as these mortgages all had receivership clauses. The defendants claim there was some talk of them being allowed to lease the land for a while, but in their contract, which they cite, they agree to give possession of the land on March 1, 1932. Sub-

sequently the parties entered into a lease by which the defendants leased the land from the plaintiffs. The first lease expired March 1, 1933, and the second one March 1, 1934, and in the leases defendants expressly agreed to surrender the land at the expiration of the lease. One of the defendants testified that it was said the defendants would be allowed to stay and remain in possession of the farm as long as it was in the possession of the plaintiffs. But the plaintiffs in their testimony deny all of this, and, subsequent to the entering into of first contract and making of deed, these leases mentioned were made. Plaintiffs testified that they had no personal claim against the defendants at all; simply had mortgages against the land. The plaintiffs claimed they never made any statement that the Nelsons could live on the farm as long as the farm belonged to the plaintiffs, and made no agreement other than such as is in the written agreement. There is no claim that there was ever any question raised after the making of the deed, between the plaintiffs and defendants, as to their rights therein being otherwise than is shown in the contract prior to the defendants' deed, until some time prior to the expiration of the period of lease, March 1, 1934, the defendants made the claim they were going to hold the place and would not get off at the time stipulated in the last lease, to wit, March 1, 1934. Promptly following that, the plaintiffs commenced this action to determine their rights in the matter and to finally get possession of the premises, if the court sustained them.

So, under the evidence, we hold that, the burden of proof being on the defendants to show their claim that their deed was only held as a mortgage, they have not even shown by a preponderance of the evidence that there was any different contract than that in writing made prior to making the deed; that there has been a total failure of the defendants in this case to show anything that in any way impeaches the transaction.

■■■ The leases by which the plaintiffs leased the premises to the defendants, one dated to expire March 1, 1933, and one to expire March 1, 1934, are absolutely inconsistent with the theory of the defendants in this case. It is the law that the tenant cannot set up a title in himself to defeat the title of the landlord; that it is against the policy of the law to permit him so to do. 35 C. J. 1224, section 565, states:

"No rule is better settled by the decisions than the general one that a tenant in undisturbed possession of the demised premises is estopped to deny the title of the landlord, as such title of the landlord existed in him at the time of the creation or the inception of the tenancy, before a surrender of possession to the landlord."

And goes on to point out that this is based upon considerations of public policy. So we have here defendants giving the deed, making a contract prior to giving such deed, and subsequently entering into two different leases between the plaintiffs and defendants, covenanting in the leases to surrender possession at the end of the lease, and the defendants now setting up that all this time they had title and said nothing about it at the time of the inception of the deed until they concluded somehow or other they might remain. Clearly, the rule works here. This is supported by the Iowa authorities as a general rule. Bowdish v. City of Dubuque, 38 Iowa 341; Stout v. Merrill, 35 Iowa 47; Chambers v. Irish, 132 Iowa 319, 109 N. W. 787; Simons v. Marshall, 3 G. Greene, 502; Burch v. Wickliff, 209 Iowa 582, 227 N. W. 133; 1 R. C. L. p. 747, section 68. So we hold that under the circumstances shown in this case the defendants cannot now come in and claim that the landlord had no title when he leased the land to them; that it was subject to their prior claims.

Going now further into another feature of this case, the defendants cite and rely upon Fort v. Colby, 165 Iowa 95, 144 N. W. 393; Tansil v. McCumber, 201 Iowa 20, 206 N. W. 680. These cases are not in point. The facts are so different herein from what were the facts in the cases relied upon. The first, Fort v. Colby, is a long case. It shows that Fort was the owner of large tracts of land; that he was largely involved, but that there was a large equity; that the Colbys advanced him money, took deeds, and charged him interest from time to time on this money. They must have had in their mind all the time an idea of beating Fort out of the large equity he had in this property and of getting it themselves. So in the case of Tansil v. McCumber the court held that a deed would be deemed a mortgage when the transaction had its inception in an application by the grantor for a loan; second, when redemption by the grantor was mutually contemplated; third, when the value of the land ex-

ceeded the amount advanced by the grantee; fourth, when the evidence justifies a finding that the deed was exacted as a means of avoiding the foreclosure statutes; and, fifth, when, in its last analysis, the grantor and grantee occupied the relation of creditor and debtor, even though they did not always consistently maintain such relations. In this case the defendants were not in the position of debtors of the plaintiffs. The preponderance of the evidence shows they fully understood the transaction, as evidenced by the contract, and that their rights would cease under the contract made before the deed, and they were to give possession of the land to the plaintiffs not later than March 1, 1932. And it was with knowledge of this they entered into the two different leases for the premises, agreeing to surrender under one lease ending March 1, 1933, and the other ending March 1, 1934. The evidence further showed in the last case cited that there was considerable profit to McCumber, a considerable loss to Tansil. In the case here there was no profit to the plaintiffs and no loss to the defendants. They were on the farm that was subject to the foreclosure of the first mortgage for an amount more than double the claimed value of the land. Under this mortgage, it being like all the Joint Stock Land Bank mortgages, a receiver could have been appointed and procured at the commencement of this suit. So they gave up nothing of any value; plaintiffs could in no way profit by it, except perhaps protect themselves; the defendants stepped out of the transaction owing nobody anything. In cases which show there was no unconscionable profit taken or could be taken from the grantor in a deed, it has been declared not a mortgage; it is only where there was an overreaching by the grantee in procuring the deed, and generally the fact in all cases, that there was great and unconscionable profit to the grantee and bad faith and great loss of the grantor.

Lord Coke, a famous English judge, said centuries ago: "Reading maketh a full man, speaking maketh a ready man, but writing maketh an exact man." So, when parties make an agreement and put it in writing, it is that the agreement will be exact and will correctly express the arrangements arrived at. Because of this there originated the parol evidence rule, and all the agreements arrived at are presumed to be embodied in the writings.

In this case we have the agreements in writing, i. e., the

contract preceding the deed; the deed itself; and the two written leases. Each and every one of these are contradictory of the claims of the defendants, and their oral evidence is contradictory to each of these instruments. The oral evidence of the plaintiffs, given by as reputable witnesses as those of the defendants, fully contradicted the evidence of the defendants. The evidence of the defendants standing alone, without contradiction, is hardly sufficient to make in this case a mortgage out of the deed. But we are confronted with the rule that in such cases the evidence must be clear, satisfactory, and convincing, in order for the court to declare this deed a mortgage. The district court could not do otherwise than it did in this case. So in accord with these considerations we think that the lower court arrived at the proper conclusion when it entered a decree sustaining the deed as it is and entered a decree against the defendants, and for these reasons the decision of the lower court is hereby affirmed.—Affirmed.

All Justices concur.