O. F. ROSS, Appellee, v. THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Appellant.

No. 45269.

June 18, 1940.

Foster & Foster and R. E. Duffield, for appellee.

Stipp, Perry, Bannister & Starzinger and Donald D. Holdoegel, for appellant.

MILLER, J.—Plaintiff's petition demanded judgment in the sum of $500 on a policy of fire insurance. The policy contained the statutory provisions prescribed by section 9018 of the Code, 1939, among which is subparagraph IV-d, to the effect that, unless otherwise provided by agreement, the policy shall be void "if the interest of the insured be other than unconditional and sole ownership." The answer was in three divisions. Division I asserted that plaintiff held legal title as security for a loan of $68.46 and had no insurable interest beyond the amount of said loan and taxes advanced. Division II asserted that subparagraph IV-d was violated in that plaintiff was not the unconditional and sole owner of the property and the policy was void. Division III consisted of a general denial of allegations not specifically admitted. The reply was a general denial of the allegations of the answer.

It was stipulated that the policy sued on was originally issued to V. C. Hennen and by him assigned to plaintiff, the conditions of the policy were not waived by the defendant, the value of the dwelling insured was $800 and it was damaged by fire on May 22, 1937, in an amount in excess of $545. Plaintiff identified the deed to the property which was executed by Hennen and delivered to plaintiff. On cross-examination, plaintiff testified that the consideration for the deed was the payment by him of delinquent taxes in the amount of $58.10. The policy and the deed were received in evidence and plaintiff rested.

Defendant's witness Charter testified that he drew the deed. He called Hennen's attention to the fact that it was not a mortgage but a deed and asked if he knew what he had done.

He replied that he knew what he had done, but it was understood even though it was a deed that, if he was able to get hold of the money and give plaintiff the money he advanced for taxes, together with a reasonable amount of money for his trouble, he was to have the place back and plaintiff said he would do that for him. Charter further testified that plaintiff refused to take a mortgage, insisting upon a deed because he did not want to have any trouble foreclosing a mortgage and Hennen said: "If I cannot raise the money to refund you I would prefer you to have the property than anybody else." This conversation in regard to deeding the property back occurred after the transfer was completed.

Charter identified an affidavit executed by plaintiff before him, as a notary public, in which plaintiff stated that Hennen approached him in regard to borrowing some money to purchase the tax certificate on the property, that he purchased the certificate for $58.10 and later paid taxes of $10.36; Hennen gave him a deed to the property because he demanded this instead of a mortgage and note; he did not want to foreclose a mortgage in case Hennen failed to pay him; it was agreed that Hennen could redeem the property at any time and Hennen promised to pay plaintiff in a short time but, not hearing from him, the deed was recorded and the policy assigned to plaintiff; plaintiff has been holding the property waiting for Hennen to take some action and feels that his interest in the property is $100.

C. W. Ward, clerk of the auditor's office, identified the record as showing $58.10 paid by Hennen to redeem the property. The record was introduced in evidence. Defendant rested.

In rebuttal, plaintiff testified that Hennen said if he would pay the taxes, he would deed him the property and the conversation about deeding the property back was had after the deed was executed and delivered; any time Hennen wants to exercise his option plaintiff will deed the property back if he still has it; plaintiff is still willing to permit Hennen to ex-

ercise his option. He also testified to certain diverting circumstances in connection with the execution of the affidavit identified by Charter and repudiated some of the statements therein contained. In regard to Hennen's promising to pay back the money, plaintiff testified: "I don't think he said he would, he might have, but I don't recollect him saying anything." He also testified that he gave him the option to repurchase because of Hennen's appearance and disappointment at having lost the property.

On cross-examination, plaintiff admitted that he didn't know who was occupying the property, saw the property just once after he took the deed, did not collect any rent, did not take charge of the property in any respect, did not go to see whether anyone was in it or not, told Hennen he could collect the rent; he didn't want to steal the property; "After I took the deed, after I looked him over, I thought I had better give it back to him if he would pay me back. If he didn't pay it back I would always have the property. It was mine, anyhow. * * * Hennen never asked me to borrow money. He said he would rather give the property to me than lose it to them people."

It was stipulated that the original amount paid to redeem from taxes was $58.10 and subsequent taxes were paid by plaintiff, making the total amount paid for taxes on the property the sum of $81.19.

Plaintiff further testified that, after the fire, he didn't visit the property; in the summer of 1938 it was still in the condition it was after the fire, was condemned and he sold the salvage for $45; if plaintiff recovers herein, he expects to pay Hennen any amount that is collected in excess of what he has paid out and the expense he has been put to.

Hennen testified that he was the owner of the property and disposed of it to plaintiff because he could not redeem from a tax sale. He told plaintiff, "I will deed it to you if you will pay it" and did; after the delivery of the deed to plaintiff, plaintiff said: "Now, in case you get this money

and pay me back I will deed it back to you. You can have it back.'' Hennen did not say he would or would not pay it back. He collected no rent. Plaintiff told him that if he collects in this case, he would pay him any amount over and above what he has advanced on the property. Plaintiff gave him an option to repurchase the property upon making payment to him of the sum of $100 and whatever costs should be incurred by plaintiff. By a petition of intervention, Hennen had previously claimed an equitable lien against the proceeds of the insurance for the amount thereof less the sum of $100 and the costs of prosecuting the action, including attorney fees. Before the fire, Hennen had notice served on the tenants to vacate the property. He tarred the roof at his own expense, at the direction of plaintiff. He had the material and put in his own time. He estimated the reasonable price for such work to be $5.00.

Ward Badger testified that he was a witness to the transaction; Hennen said he would rather that plaintiff have the property than the other people; Hennen made no statement that he was going to repay whatever plaintiff put into it and plaintiff made no demand on Hennen that he repay it. There was other testimony, of course, but the foregoing reviews the substance of the testimony.

At the close of the evidence, the defendant made a motion for a directed verdict, asserting primarily that the plaintiff had failed to prove that he was unconditional and sole owner of the property and the evidence showed that plaintiff's only interest in the property was to the extent of the advances made by him for taxes; subparagraph IV-d of the policy had been breached; if a verdict should be returned in favor of plaintiff, it would be the duty of the court to set the same aside as contrary to law and contrary to the evidence.

In ruling upon the motion, the court indicated that, if he was deciding the case as a court of equity, he would be disposed to the view that the deed was nothing but a mortgage, but, under the record, the court did not have the right

to pass upon that question to the exclusion of the jury.. The motion was overruled and the cause was submitted to the jury which returned a verdict in favor of the plaintiff in the sum of $500. In addition to the general verdict, the court submitted two interrogatories. The first, ''Was the deed given by V. C. Hennen to O. F. Ross on February 22, 1937, given and received as an absolute and unqualified conveyance of the property therein described?'' was answered, ''Yes''. The other, ''Was the deed given by V. C. Hennen to O. F. Ross on February 22, 1937, given and received as security for a loan to V. C. Hennen for money advanced at that time and for any further taxes to 'be advanced by O. F. Ross?'' was answered, ''No''. A motion for new trial and exceptions to the instructions were filed, together with a motion for judgment notwithstanding the verdict. The motions were overruled and judgment was entered on the verdict from which defendant appeals.

The decision in this case has been rendered more onerous than it might otherwise have been by reason of the fact that counsel for appellee have not seen fit to file a brief and argument and the authorities cited and relied upon by counsel for appellant do not appear to be controlling. From our independent research on the question, we are of the opinion that appellant's assignments of error are without merit.

■■ I. One of the principal contentions, raised by appellant's assignments of error, is the assertion that the record was insufficient to warrant submitting to the jury the question whether the deed was an absolute conveyance. Appellant's contention is that the evidence is so clear and convincing that the deed was intended solely as a mortgage, that the court should have so instructed the jury as a matter of law. We find no merit in this contention.

This court has recognized that, where a borrower, for a nominal consideration, executes a deed of property to the creditor, there is a presumption that the deed is a mortgage. Morton Farm. Mut. Ins. Assn. v. Farquhar, 200 Iowa 1206, 1211, 206 N. W. 123, 126. We have also recognized that gross in-

adequacy of consideration for a deed constitutes a strong circumstance that the deed is intended as a mortgage. Holman v. Mason City Auto Co., 186 Iowa 704, 171 N. W. 12; Fort v. Colby, 165 Iowa 95, 144 N. W. 393; Keeline v. Clark, 132 Iowa 360, 106 N. W. 257; Caldwell v. Meltveldt, 93 Iowa 730, 61 N. W. 1090; Fuller v. Griffith, 91 Iowa 632, 60 N. W. 247; Wilson v. Patrick, 34 Iowa 362.

We have held repeatedly, however, that the evidence to prove that a deed, absolute on its face, is intended as a mortgage must be clear, satisfactory and convincing. McKenney & Seabury v. Nelson, 220 Iowa 504, 262 N. W. 101; Cold v. Beh, 152 Iowa 368, 132 N. W. 73; Bradford v. Helsell, 150 Iowa 732, 130 N. W. 908; Jones v. Gillett, 142 Iowa 506, 118 N. W. 314, 121 N. W. 5; Robertson v. Moline, etc. Co., 106 Iowa 414, 76 N. W. 736. Cases, in which we have held the evidence was insufficient to establish that a deed was intended as a mortgage, include the following: McKenney & Seabury v. Nelson, supra; Shanda v. Clutier State Bank, 220 Iowa 290, 260 N. W. 841; Maytag v. Morgan, 208 Iowa 658, 226 N. W. 93; Hinman v. Sage, 208 Iowa 982, 221 N. W. 472; Cold v. Beh, supra; Hemsted v. Hemsted, 150 Iowa 635, 130 N. W. 413; Bradford v. Helsell, supra; Ridings v. Marengo Savings Bank, 147 Iowa 608, 125 N. W. 200.

It was the contention of appellee in the court below that the deed from Hennen to plaintiff constituted plaintiff the unconditional and sole owner of the property and that Hennen's only interest therein arose by virtue of an option to repurchase, which option was granted to Hennen after the deed had been executed and delivered. We are of the opinion that there was substantial evidence to support appellee's contention and, therefore, the court was required to submit the issue to the jury.

In the case of Morton Farm. Mut. Ins. Assn. v. Farquhar, supra, we state, at page 1210 of 200 Iowa, at page 125 of 206 N. W., as follows:

"Whether a deed shall operate as an absolute transfer of

title and possession, or shall operate as a continuing security for a debt, is a question always dependent upon the antecedent transaction pursuant to which it was executed.''

In Clark v. Chapman, 213 Iowa 737, 743, 239 N. W. 797, 800, we state:

''Only clear and satisfactory evidence can be accepted to warrant the conversion of a warranty deed into a mortgage security. It was incumbent upon the defendants to prove in such manner: (1) That the consideration for the warranty deed was an existing indebtedness, together with the amount of such indebtedness; and (2) that such indebtedness was not extinguished by the conveyance, but was kept alive.''

The case of Shanda v. Clutier State Bank, supra, involved a fact situation analogous to that presented here. The plaintiff there contended that a deed given to the defendant bank was intended as a mortgage. The bank, on the other hand, contended that the deed conveyed the title and that the only interest of the grantor in the property arose by virtue of an option to repurchase. This court sustained the title of the bank, stating at page 296 of 220 Iowa, at page 843 of 260 N. W., as follows:

''While it is true that a deed, absolute in form, will be construed as a mortgage whenever it appears that its purpose is to secure a debt, such a construction cannot very well be resorted to where there is no debt. McMahon v. Gotch, 191 Iowa 1, 179 N. W. 929; Hinman v. Sage, 208 Iowa 982, 221 N. W. 472. The evidence here all tends to show that, after the making of the deed in question, Konicek was not indebted to the bank. * * * The case is distinguishable from cases where the grantor agrees to buy the land back and, therefore, owes the same amount as before. He did not agree to buy the land here, and assumed no obligation in the option contract.''

 We think that the foregoing language is controlling here. There was evidence to the effect that Hennen's deed to

plaintiff satisfied the debt and that there was no debt remaining. The grantee of an option to repurchase assumes no obligation to buy the property. Under such option there is no debt. If there is no debt, then there is nothing for the deed to secure and it cannot be construed as a mortgage. We are inclined to the view that was announced by the trial court. If this were an action in equity triable de novo here so that we might pass upon the credibility of the witnesses, there would be much persuasion to the argument of counsel for appellant that this deed was in fact intended to be a mortgage and that there was a debt for which it stood as security. But we are not privileged to pass upon the credibility of the witnesses. That was for the jury. We have neither the privilege nor the duty to find the facts. As often stated, our only function, in a case such as this, is to determine from the record what the jury was warranted in finding the facts to be. We are also required to consider the facts in the most favorable light for the plaintiff. When our duty is so considered and when the record is so reviewed, we are of the opinion that the trial court correctly held that the issue was one for determination by the jury.

 Appellant reminds us that this court has repeatedly recognized that the scintilla of evidence rule has been abolished in this state. We are mindful of that fact. We disagree with appellant in this. There was more than a mere scintilla of evidence to support the verdict. There was substantial evidence to sustain appellee's contention. A jury question was presented. The determination of the jury on the credibility of the witnesses is binding upon us.

 II. Appellant contends that, if plaintiff was entitled to recover at all, the recovery should have been limited to the plaintiff's interest in the property. Appellant's theory appears to be that the coverage which was afforded appellee was limited to appellee's investment in the property. To answer this contention requires an interpretation of the policy here sued upon. The policy is not set out in the abstract. The reference to it

in the pleadings is limited to statements of its general description. The record is wholly insufficient to warrant our attempting to determine the extent of the coverage granted appellee by the assignment of the policy. Accordingly, the contention is without merit.

III. A number of instructions, given by the court to the jury, were excepted to by appellant. The exceptions to the instructions are made the basis for several assignments of error here. We have repeatedly recognized that, in determining whether statements in instructions which might, under some circumstances, appear to be erroneous, shall be deemed to constitute reversible error, the instructions must be read as a whole. When they are so considered, we find no merit in appellant's contentions.

Appellant's assignments of error have been carefully considered. Finding no merit in them, the judgment is affirmed.—Affirmed.

MITCHELL, SAGER, OLIVER, BLISS, STIGER, and HALE, JJ., concur.