E. H. MAYTAG, Appellee, v. H. L. MORGAN et al., Appellants.

No. 39533.

JUNE 24, 1929.

*E. M. S. McLaughlin* and *J. G. Shifflett,* for appellants.

*Campbell & Campbell,* for appellee.

GRIMM, J.—On January 3, 1920, the defendant H. L. Morgan became the owner of the land in controversy, by warranty deed from one Altemeier and his wife. The property will, for the sake of brevity, be referred to as the ''Altemeier farm.'' The defendant H. L. Morgan and his wife, Amanda K. Morgan, took possession of the Altemeier farm on March 1, 1920. On December 28, 1923, H. L. Morgan conveyed, by warranty deed, his interest in the Altemeier farm to his wife, Amanda K. Morgan, subject to the mortgages then of record. This deed was recorded December 31, 1923. On March 22, 1924, the defendants Morgan, husband and wife, executed a warranty deed to the Altemeier farm to one Allfree. This instrument contained, in addition to the ordinary form of warranty deed, a clause as follows: ''Possession to be given September 1, 1924.'' On March 22, 1924, the date of the deed from the Morgans to Allfree, an agreement was entered into between the Morgans and Allfree, which, omitting the description, is as follows:

''Exhibit I.''

''This Agreement Made and Entered Into by Harry B. Allfree as first party, and Amanda K. Morgan and H. L. Morgan as second parties: Witnesseth:

''That, whereas, said first party now owns and holds various mortgages aggregating large amount against the following described land, situated in Jasper County, state of Iowa, to wit: [Here follows description of Altemeier farm.] And, the interest is delinquent and far back on said mortgages and debt.

''It is agreed by said first party in consideration of the agreements of said second party hereinafter specified that he will not begin action or actions to foreclose said mortgages herein referred to at the April 1, 1924, term of district court of Jasper County, Iowa. And, said second parties in consideration of said delay of said action or actions as above specified hereby agree that on or before the first day of September A. D., 1924, they will pay up in full all the back interest now due on said mortgages and notes covering the real estate hereinbefore described, and in

addition thereto will on the first day of September A. D. 1924 pay the interest which will be due on said mortgages on the first day of March, 1925, and will pay up in full all of the taxes due and unpaid on said land, and in the event of such payments in full by the second parties said mortgages shall continue on according to their terms. But if said payments are not so paid as above specified on September 1, 1924, then on default thereof said second parties hereby agree to convey on said September 1, 1924, to H. B. Allfree, Incorporated, by warranty deed all of said above land subject to said taxes, and said mortgages and back interest with warranty against their own acts and all other liens, and at the same time second parties shall duly transfer the lease for the year 1924-25 with notes and proceeds to the first party and when said deed and transfer is so made said first party shall be the absolute and unconditional owner of all of said land and the lease so assigned.

"It is further stipulated and agreed that the second parties shall at the time of the execution of this contract sign and execute to H. B. Allfree, Incorporated a warranty deed of the real estate hereinbefore described subject to the mortgages, interest and taxes against the same and also assign said lease and rent notes to H. B. Allfree, Incorporated, and deliver said warranty deed, lease and assignment to the Clark National Bank of Newton, Iowa, to be held by said bank in escrow, and which warranty deed, lease and assignment are to be delivered by said Clark National Bank of Newton, Iowa, to H. B. Allfree, Incorporated on the first day of September, 1924, on default of second parties complying with the terms and provisions of this contract.

"It is understood and agreed by and between the parties to this agreement that this contract is not entered into for the purpose of giving Harry B. Allfree additional security for the indebtedness due him under the mortgages covering the real estate hereinbefore described, but that it is the intent and purpose of the parties hereto to vest the absolute and unconditional title and ownership in said land to H. B. Allfree, Incorporated.

"Witness our respective hands this 22nd day of March, A. D., 1924.

"Harry B. Allfree, Party of First Part.
"Amanda K. Morgan, and
"H. L. Morgan, Parties of Second Part."

On or about the first day of August, 1924, the plaintiff (appellee), E. H. Maytag, of Newton, a friend of Morgan's, had some conversation with Morgan and with a Mr. Clark, of the Clark National Bank, relative to the Altemeier farm and the amount of mortgages existing thereon; and finally Maytag, in consideration of $34,000 in cash, secured from Allfree a deed to the Altemeier farm, subject to the mortgages thereon, aggregating about $26,000, which said deed is dated September 16, 1924. At the same time, Maytag and Morgan entered into a lease of the Altemeier farm, which lease bears date September 15, 1924. The lease contains the following language, as to the period thereof:

"From the date of this contract to March 1st, 1925; and from the first day of March, 1925, to the first day of December 1925, the first party hereby leases to the second party the dwelling house and appurtenances located on aforesaid premises which has been occupied by H. L. Morgan and family.

"And for the rent of said premises for the period above designated the second party hereby agrees to pay the cash rent of $3,000.00, payable as per note of even date herewith, on March 1st, 1925."

On January 6, 1925, E. H. Maytag (first party) and H. L. Morgan (as second party) entered into a contract, as follows:

"Exhibit C."

"This contract and agreement made and entered into this 6th day of January, 1925, by and between E. H. Maytag, first party, and H. L. Morgan, second party, witnesseth:

"Whereas said E. H. Maytag is the owner of a certain farm, known as the Altemeier farm, in Jasper County, Iowa, to which he recently acquired title from H. B. Allfree, Inc., and

"Whereas said H. L. Morgan has rendered certain services to the first party in the acquiring of said real estate from one H. B. Allfree, Inc., and intends to render future service in the sale and disposition of said farm.

"Now therefore, in consideration of the mutual agreements herein contained, it is hereby agreed as follows: Said H. L. Morgan shall endeavor to sell said land in parcels or as a whole for the period from the date of this contract to March 1, 1930. In the event of a sale of said property said Maytag shall be first

reimbursed for the sum of $60,000.00 invested in the purchase price of said farm, together with interest thereon at the rate of six per cent per annum from September 1, 1924. Said Maytag shall also be reimbursed for all sums invested or expended for taxes, attorney fees, insurance, operating expenses, interest, real estate commissions and any other sums expended in connection with said farm, with six per cent interest on all sums from the time so invested or expended.

"Both parties shall share in the profits and losses in the operation of said farm and these are to be taken into consideration in arriving at the share due Maytag and the commission due Morgan in the final settlement of this transaction. Proper and adequate books of account shall be kept of all receipts and expenditures in connection with said farm which shall be open to the inspection of either party at any time.

"Possession of said premises shall continue and remain in E. H. Maytag throughout the life of this contract, except that said H. L. Morgan shall be entitled to possession of the dwelling house on said premises under a lease now existing between H. L. Morgan and E. H. Maytag dated September 15, 1924, until December 1, 1925. After December 1, 1925, said Maytag shall have the exclusive possession of said premises. It is understood, however, that if prior to December 1, 1925, said dwelling house is sold, the said Morgan hereby agrees to give possession of said dwelling house to the first party upon sixty days' written notice. For the period following December 1, 1925, said H. L. Morgan shall have first opportunity to rent said dwelling house from said Maytag, on such terms as they may then agree upon.

"It is understood that said sums herein provided to be paid to H. L. Morgan shall constitute his commission in full for the sale of said premises and represents his only interest in said real estate. It is agreed that said farm belongs exclusively to said E. H. Maytag and he shall have exclusive care, custody, control, and right to dispose of same. If commissions are paid to others for the sale of any part of said land, same shall be charged to the operation of said farm and shall be taken into consideration in arriving at a final settlement between the parties.

"If at any time said Maytag desires to sell any or all of said farm at a price which said Morgan thinks is inadequate, the said Morgan shall have the right to purchase said tract for cash at the

price offered for the tract within thirty days from notification to him for such opportunity to sell.

"If said real estate shall not have been entirely disposed of before March 1st, 1930, the said H. L. Morgan shall have no interest in this contract or right to commission hereunder, but the whole of said farm and the income and profits therefrom shall belong exclusively to said E. H. Maytag. If, however, said real estate shall have been fully disposed of before said time, the said H. L. Morgan shall receive seventy-five per cent of the net profit derived from the operation and sale of said land as his commission for services rendered, and the said E. H. Maytag shall receive twenty-five per cent of the net profit derived from the operation and sale of said land for his share.

"Said E. H. Maytag shall be reimbursed in the sum of $1,854.00 of the interest money herein provided to be paid before September 1, 1925. In the event that said $1,854.00 shall not have been paid to said E. H. Maytag before September 1, 1925, this contract shall be null and void and forfeited at the option of the said E. H. Maytag.

"This contract shall be binding on the heirs, administrators and executors of the parties hereto. In case of the death of the said H. L. Morgan, his wife, his heirs, administrators or executors shall have the right to proceed with this contract on the terms herein set forth. The interest of said H. L. Morgan in the commissions herein provided for may be assigned to his wife, Amanda K. Morgan.

"Signed the day and year first above written.

"E. H. Maytag, First Party.
"H. L. Morgan, Second Party."

On October 25, 1927, Maytag wrote Morgan, as follows:

"Dear Harv:

"Ten days or more ago I spoke to you about moving the first of the year. You advised me that you would see me some time last week, but I suppose you have been so busy you haven't gotten to it. For fear I may forget about it and to avoid any misunderstanding, this is to notify you that I expect you to move January 1st. As explained to you, I have arranged for Mr. Martin to rent your home, in view of the fact that he is going to look after all of my farms."

On January 25, 1928, Maytag served on H. L. and Amanda K. Morgan a notice, as follows:

"You are hereby notified that I demand of you that you surrender and deliver to me at the end of February 29, 1928, the premises now occupied by you and described as follows, to wit:

"South half of northeast quarter and north half of southeast quarter, all in Section 35, Township 80, north, Range 19 west of fifth principal meridian, Jasper County, state of Iowa, being the premises where you now reside."

On February 25, 1928, Maytag served on the Morgans a notice to quit. On March 12, 1928, a suit in forcible entry and detainer was filed in justice court by the plaintiff against the defendants, to oust the defendants from the Altemeier farm. On March 15, 1928, the defendants filed an answer, denying the allegations of the petition, except admitting that they were in possession, and alleging that Amanda K. Morgan is the owner of the real estate, alleging that the apparent title held by the plaintiff to the premises by reason of a warranty deed was not, in fact, title, the said deed being a mortgage. The answer further sets up the general claims of the defendants in reference to all the transactions involved, from the time of the deed from the Morgans to Allfree to the time of the filing of the answer. A motion to transfer the cause to the district court was made, and on March 19, 1928, the transcript was filed.

I. A brief statement of a few of the principles of law which must be applied to a consideration of the controversy in this case seems advisable.

In the first place, it is well established that:

"A deed purporting to transfer or convey title to property may be shown by parol to have been given and received as a mortgage, whether the action be in equity or at law." *Doolittle v. Murray & Co.,* 134 Iowa 536.

See, also, *McAnnulty v. Seick,* 59 Iowa 586; *Frick v. Kabaker,* 116 Iowa 494, 502; and other cases. The reason for the rule is very clearly set forth in the *Doolittle* case, supra. It must be noted, however, that, while the purpose for which a writing was delivered may generally be shown by parol, this is subject to the restriction that the purpose thus shown "must not be in con-

tradiction of the express terms of such writing.'' See *Doolittle v. Murray & Co.*, supra, and cases cited. This court has also stated the rule to be that:

''* * * where the writing is something more than a formal transfer of title, is executed by both parties, and contains mutual stipulations and provisions which they specifically undertake to observe, it is held with very general unanimity that parol evidence is not admissible.'' *Doolittle v. Murray & Co.*, supra.

Further, from the same case:

''Where the parties have in writing declared in clear and unambiguous terms the purpose of their agreement, that declaration cannot be denied or varied by proof of prior or contemporaneous parol agreements. * * * 'Where, however, instead of a mere transfer or assignment, there is a contract appearing on its face to be complete, with mutual obligations to be performed, you can no more add to or contradict its legal effect by parol stipulations preceding or accompanying its execution than you can alter it through the same means in other respects.' '' *Doolittle v. Murray & Co.*, supra.

This whole subject-matter is fully dealt with, with an abundance of citations, in the *Doolittle* case. The whole subject was also fully dealt with in *Bilbo v. Ball*, 194 Iowa 875 (opinion by Evans). The earlier Iowa cases are therein assembled and classified. It seems unnecessary to further cite cases in support of the foregoing propositions.

There is no satisfactory explanation why, in December, 1923, H. L. Morgan by warranty deed passed the title to this Altemeier farm to his wife.

In March, 1924, Allfree, personally and as the representative of one Ross, of Chicago, held mortgages against the Altemeier farm, aggregating about $80,000. The interest on these mortgages became due March 1, 1924, and Morgan was unable to pay. Allfree advised Morgan that, if the interest should not be paid, foreclosure proceedings would be started in the April, 1924, term. Morgan himself, testifying on the subject, says:

''So, in our conversation [Allfree and Morgan], we made arrangements to put up a deed with D. L. Clark, who was my bank-

er, and drew a contract that this deed was put up for security for the payment of interest, and the contract recited that, if the interest was not paid by September 1, 1924, this deed would be absolute.''

It is apparent that the warranty deed from the Morgans to Allfree (Exhibit H) and the contract (Exhibit 1) executed by Allfree and the Morgans represented one transaction. They were executed on the same day, and, as previously shown, Morgan himself testified, in substance, that the two documents were parts of the same transaction. The deed on its face is an absolute conveyance, specifying possession to be given September 1, 1924. The agreement explains the reason for the giving of the deed, and the terms and conditions under which it was given. We are asked to hold that this transaction constituted the giving of a mortgage by the Morgans to Allfree. The rule as to the proof upon such a question is variously stated in the various jurisdictions, but this court has said:

''A deed purporting to convey absolute title will not be held to be a mortgage only, unless the evidence is so clear and satisfactory as to leave no doubt that the real intention of the parties was to execute a mortgage.'' *Bradford v. Helsell*, 150 Iowa 732, and cases cited.

Under this agreement, Exhibit 1, Allfree refrained from bringing any foreclosure proceedings in the April, 1924, term of the district court, in consideration for which the Morgans contracted and agreed that, on or before the 1st day of September, 1924, they would pay up in full all the back interest then due on said mortgages, covering the real estate described in the deed, and other interest, and all the taxes. Then the parties mutually agreed:

''But if said payments are not so paid as above specified on September 1, 1924, then, on default thereof said second parties [Morgans] hereby agree to convey on September 1, 1924, to H. B. Allfree, Incorporated, by warranty deed all of said above land subject to said taxes, and said mortgages and back interest with warranty against their own acts and all other liens, and at the same time second parties shall duly transfer the lease for the year 1924-25 with notes and proceeds to the first party and

when deed and transfer is so made. said first party shall be the *absolute and unconditional owner of all of said land and the lease so assigned.*"

There follows, in the exhibit, a stipulation and agreement in reference to the execution of a warranty deed from the Morgans to Allfree, Incorporated, and the placing of the same in escrow with the Clark National Bank:

"* * * which warranty deed, lease and assignment are to be delivered by said Clark National Bank of Newton, Iowa, to H. B. Allfree, Incorporated on the first day of September, 1924, on default of second parties' complying with the terms and provisions of this contract."

Then follows significant language, as follows:

"* * * this contract is not entered into for the purpose of giving Harry B. Allfree additional security for the indebtedness due him under the mortgages covering the real estate hereinbefore described, but that it is the intent and purpose of the parties hereto to *vest the absolute and unconditional title and ownership in said land to H. B. Allfree, Incorporated.*"

There is no claim in the record that the Morgans complied with the terms of this agreement. There is not in the record such a satisfactory showing as warrants us in finding that the transaction consummated by the deed from Morgans to Allfree, and the contract between the same parties, amounted to a mortgage. As was said by this court in *Bigler v. Jack,* 114 Iowa 667:

"Surely parties have the right to make valid contracts of sale, with agreements to reconvey on certain specified conditions, that will not be treated as mortgages. Courts do not undertake to make contracts. They simply interpret and enforce those already made."

Further, the court says, quoting from 3 Pomeroy's Equity Jurisprudence (2d Ed.), Section 1195:

" 'Whether any particular transaction does thus amount to a mortgage or to a sale with a contract of repurchase must, to a large extent, depend upon its own circumstances; for the question finally turns, in all cases, upon the real intention of the parties,

*as shown upon the face of the writings,* or as disclosed by extrinsic evidence.' " (The italics are ours.)

In the transaction at bar, the Morgans were granted the privilege of paying up, in full, all the back interest on the notes and mortgages covering the real estate, and, in addition thereto, the interest due on the mortgages on the 1st day of March, 1925, together with all of the taxes due and payable on the premises, in which event the warranty deed, complete and absolute on its face, then in escrow with the Clark National Bank, would be returned to the Morgans, and the incident would be closed; but, upon failure so to do, then, in accordance with the unambiguous and positive terms of the contract, the deed then in escrow became the property of Allfree, and Allfree became the absolute and unconditional owner of the Altemeier farm. Under the well established rules, the Morgans have not satisfactorily borne the burden imposed upon them in order to have the transaction declared to be a mortgage, instead of a deed.

It will be noted that, prior to the 1st day of September, 1924, the plaintiff in this case became an interested party. Morgan testified that he had several conversations with Maytag, and that he also talked with Clark, of the bank, in reference to the purchase by Maytag of the mortgages held by Allfree. These negotiations resulted in a deed from Allfree to Maytag, dated September 16, 1924 (Exhibit A). This instrument was made two weeks after the time when, under the deed and contract between the Morgans and Allfree, all of the Morgan interests expired. The deed from Allfree to Maytag is in the usual form of warranty, reciting as consideration one dollar and the assumption of $36,000 in mortgages then on the land. It appeared otherwise from the evidence that $24,000 in cash passed from Maytag to Allfree, as consideration for the Altemeier farm.

On the same day, by a document manifestly erroneously dated the 15th, Maytag and Morgan entered into a lease covering the Altemeier property (Exhibit B). The lease provides for a cash rental of $3,000 per year, payable as per note of even date with the lease, due March 1, 1925.

Later, and on the 6th of January, 1925, Maytag and Morgan entered into a contract (Exhibit C), which, as we view it, is significant in many particulars. In this connection, we may note

that the defendant Amanda K. Morgan, testifying in this case, stated:

"I did not at any time have any conversation with E. H. Maytag with reference to this farm transaction. I never signed any contract or lease with reference to this farm with Mr. Maytag, nor did I ever see him. I never saw Exhibit B [lease from Maytag to Morgan]. I never saw Exhibit 4 [deed from Allfree to Maytag]. I suppose Mr. Morgan entered into this deal with Mr. Maytag, that I knew about; he is transacting my business as my agent."

There is further evidence in the record, to the effect that Mrs. Morgan had experience in a law office in Newton, with some business experience.

There is no claim that the Morgans were paying taxes on the Altemeier farm.

There appears in the record no satisfactory explanation of the lease of September 15, 1924, from Maytag to Morgan, except the one that the Morgans considered that Maytag owned the property and was leasing the same to the Morgans. We need not enter into a discussion of the well known rules with reference to the relations of landlord and tenant and the estoppel in relation to title, which obtain by reason of the relationship created by this lease, Exhibit B.

We come now to a consideration of the terms of Exhibit C, the contract of January 6, 1925, entered into by E. H. Maytag (party of the first part) and Morgan (party of the second part). This instrument was executed without any claim of fraud or misconduct of any character by the parties, about three years prior to the time the plaintiff began removing the Morgans from the Altemeier farm. In it there appears the following:

"Whereas said E. H. Maytag is the owner of a certain farm, known as the Altemeier farm, in Jasper County, Iowa, to which he recently acquired title from H. B. Allfree, Inc., * * *"

There follows a recitation in reference to services rendered and to be rendered by Morgan to Maytag, and then the parties definitely agree on terms under which Morgan is to endeavor to sell the Altemeier property. The contract specifies in reference to the possession of the premises, and contains this language:

"It is understood that said sums herein provided to be paid to H. L. Morgan shall constitute his commission in full for the sale of said premises and represents *his only interest in said real estate*. It is agreed that said farm *belongs exclusively to said E. H. Maytag* and he shall have exclusive care, custody, control, and right to dispose of same."

The contract then provides:

"If said real estate shall not have been entirely disposed of before March 1st, 1930, the said H. L. Morgan shall have no interest in this contract or right to commission hereunder, but the whole of said farm and the income and profits therefrom shall belong exclusively to said E. H. Maytag."

We have carefully examined all of the testimony presented on behalf of the defendants, in which, in substance, the Morgans claim that, notwithstanding all of the instruments hereinbefore referred to, Maytag had purchased the interest of Allfree, which, as the Morgans contend, was only a mortgage, and that Maytag never became, as to the Altemeier farm, more than the holder of a mortgage, to secure the payments made by him.

Morgan testified, in substance, among other things, in reference to conversations with Maytag at or about the time of the transfer from Allfree to Maytag, that Maytag stated that all he wanted was part of the profits of the transaction, together with interest on his money; that he would loan $60,000, to clear up the transaction; that there was to be a deed to Maytag, then Morgan was to sell off the land in parcels, allowing Maytag six per cent interest for five years,—and many other details along the same line. It is admitted that no definite arrangements were made in reference to produce from the farm. It is not claimed that anyone was present at any of these conversations except Morgan and Maytag. There is testimony in the record to the effect that accurate books were being kept on the Altemeier farm operations, which, however, are entirely consistent with the provisions of the contract of January 6, 1925.

One Clark, of the Clark Bank, testified that Maytag expressed a desire to help Morgan out, and made inquiries concerning the price at which the mortgages held by Allfree could be purchased.

It would unduly extend this opinion to set out in detail the evidence on behalf of the defendants.

Mr. Maytag's testimony is, in substance, a denial that he merely desired to purchase the mortgage on the Altemeier property. He specifically states as follows:

"I did not have any knowledge, at the time I took the deed to this land, that the deed which Allfree held was not an absolute one. Nobody told me that the Allfree deed was not an absolute one; there was never anything said about that; there was never any statement made between Mr. Morgan and me as to this deed, not being absolute, or that it was just a mortgage."

It is undisputed in the record that, after the contract Exhibit C, dated January 6, 1925, Morgan, acting as the agent and representative of Maytag, sold various pieces of real estate out of subdivisions of the Altemeier farm, the deeds passing direct from Maytag to the purchasers. It also appears that Maytag built certain houses and other structures on some of these subdivisions, and the record is absolutely silent as to any protest of any kind from the Morgans, or any expression of any kind from the Morgans to Maytag in reference to their ownership of any portion of the Altemeier property, until Maytag began procedure to dispossess the Morgans of the premises. Even then, there was no claim of ownership made to the Altemeier property until the answer to the petition in forcible entry and detainer was filed in justice court. Morgan himself, testifying on the subject, says, among other things, referring to the notices which were served on him:

"And then he wrote me a letter, and told me he wanted me to move the first of January. Then I went down to talk to him one day, and asked him what was the matter. He said nothing was the matter, and then I asked him why he was figuring on my moving. He said it was too big a house for me, and he supposed I would just as soon move down town. He said Harry Martin was going to run all of his farms, and it would be nicer for him to move out there. I said, 'Why, under our arrangement that we have had for the last two years, I wasn't contemplating any change before the first of March, anyway;' that nothing had ever been said to me about the first of January. I said: 'I certainly

had not planned on moving, but I will let you know what I will do.' "

There is no claim of fraud or overreaching.

It appears from the record that Mr. Morgan was admitted to the bar and practiced law, and thereafter had been in the real estate business for several years.

We have given careful consideration to all of the claims made by the defendants, and unhesitatingly reach the conclusion that they have not met the requirements imposed upon them under the circumstances, and that the trial court correctly held for the plaintiff.

The case is—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.