EDWARD G. MOELLER, Appellee, v. J. H. STROHBEEN, Appellant.

No. 46154.

MARCH 9, 1943.

Chamberlin & Chamberlin and Charles Wittenmeyer, all of Davenport, and Herrick, Sloan & Langdon, of Des Moines, for appellant.

Lambach, Kopf & Berger, of Davenport, for appellee.

MANTZ, J.—This is an equitable action wherein Edward G. Moeller, plaintiff, brought suit against J. H. Strohbeen, defendant, praying for a decree holding that the defendant holds title, as mortgagee, to certain real estate in Scott county, Iowa, and that the plaintiff be decreed to be the owner thereof and entitled to a reconveyance upon payment to defendant of certain sums loaned to him by the defendant in 1940, and claiming that the land was transferred from plaintiff to defendant as security for such loan. Also that the defendant be decreed to be holding as security only certain stock in the Federal Land Bank of Omaha, and that the plaintiff be granted the right to redeem said land and stock, and that thereupon the defendant be required to convey to plaintiff the land and stock upon payment to defendant of whatever sum is found to be lawfully due. Plaintiff also asks for an accounting between plaintiff and defendant.

Plaintiff further prays that the various agreements entered into by plaintiff and defendant be deemed to be usurious and that any amount therein stipulated to be paid to defendant in excess of the lawful rate of interest be held to be usurious and void, and for general equitable relief.

The defendant, J. H. Strohbeen, denied generally all of the claims of the plaintiff, and denied specifically that the deed executed by plaintiff and his wife to the defendant was a mortgage or was given as security, and alleged that said deed was absolute; and alleged further that at the time said deed was executed there was also executed an option contract between

the plaintiff and the defendant wherein certain terms and conditions were set forth whereby the plaintiff was to have the right to purchase the real estate described in the deed. Defendant further pleads that no note or other writing, or oral agreement, was made between the parties, wherein plaintiff was to pay to defendant the principal or interest in any amount. Defendant alleges that he has performed all things required of him; and has operated the farm since taking title thereto, paid delinquent and current interest and installment payments to the mortgagees; paid current taxes; supervised repairs; leased the land and collected the rentals. He also pleads that he compromised and settled for plaintiff a suit against plaintiff for an indebtedness due from plaintiff to the Charles H. Moeller estate; that he stopped a suit of foreclosure on the land conveyed by the mortgagees, Federal Land Bank of Omaha and Land Commissioners; that he prevented the foreclosure of a real-estate contract of plaintiff for the purchase of a house in Davenport, Iowa, and thereby saved plaintiff $750.

Defendant claims that in order to obtain $4,000 of the purchase price of said farm he borrowed such sum from the Davenport Bank & Trust Co. of Davenport, Iowa, and put up as security therefor 300 shares of Ohio Oil Company stock and 100 shares of Texas Corporation; that due to a fall in the market price of the stock of the Texas Corporation he was compelled to sell the 100 shares of that corporation on April 14, 1941, for the sum of $3,678.42, thereby suffering a loss thereon of $2,014.08. Defendant tenders and offers to perform each and every act agreed to be performed by him under the various agreements entered into with the plaintiff.

The defendant, in an amendment to his answer, claims that he performed on behalf of the plaintiff certain enumerated services of a value of $500 and asks that he be credited with said amount.

As to the written assignment of plaintiff's interest in the estate of his father, defendant asks that the court determine what portion, if any, of the sum realized should be given plaintiff as a credit. Defendant also claims that by reason of the terms of the contracts between plaintiff and defendant, the defendant

has incurred certain expenses amounting to $1,500 and that this sum should be a credit in favor of the defendant. Defendant in his prayer asks for the sums of $500, $721.92, and $1,000, or such sums as the court finds to be fair and equitable, and for general equitable relief.

The cause was tried to the court and on April 30, 1942, the court entered a decree finding in favor of the plaintiff and holding that the warranty deed of May 7, 1940, of Edward G. Moeller and wife, conveying to J. H. Strohbeen the SW¼ of Section 19, Township 70 North, Range 2 East of the 5th P. M., Hickory Grove Township, Scott County, Iowa, for a recited consideration of $4,330, was given as security for the money paid by J. H. Strohbeen to and in behalf of the plaintiff, and that when same was executed the defendant advanced to plaintiff the sum of $3,691.72 and in addition paid the sum of $623.28 for taxes, interest, and other indebtedness on said property.

The trial court held that under the evidence the warranty deed to J. H. Strohbeen and the other instruments executed contemporaneously therewith, were in legal effect a transaction wherein Edward G. Moeller borrowed money from J. H. Strohbeen and in return gave to J. H. Strohbeen the deed in question as security for said loan. In effect, it was held that the deed was a mortgage rather than an absolute conveyance.

The court further found that a net amount of $721.92 was realized by the defendant from the share or interest of plaintiff in his father's estate and that plaintiff should be credited with such amount, thereby holding that the assignment was additional security for the loan of $4,330; also that the net rentals from the land conveyed, and collected by the defendant in the sum of $287.50, should likewise be credited to the plaintiff.

The court found that the so-called option agreement between the parties was so indefinite and uncertain as to be adjudged void and unenforceable and that the whole transaction should be treated upon the theory that plaintiff received from the defendant a certain sum of money and was bound to pay legal interest therefor, and fixed the amount of such interest at $397.40. The court held that the amount which plaintiff owed defendant in order to redeem was $3,714.98, and also found that,

as a part of the transaction, plaintiff had assigned to defendant certain shares of stock in the Omaha Federal Land Bank of the claimed value of $425, and ordered same returned to plaintiff, or in lieu thereof, that plaintiff be given credit upon the sum of $3,714.98 in the amount of $425.

The court found that subsequent to the execution of the deed plaintiff had sold the land involved to a purchaser for the sum of $22,000, to be paid in cash, and that the purchaser was ready, willing, and able to complete the sale by paying in cash the entire purchase price, paying the mortgage to the Federal Land Bank, including the commissioner's mortgage, and by paying the balance in cash to the plaintiff.

The court held that by the terms of the option between the parties, plaintiff's right of redemption expired on May 1, 1942, and held that the plaintiff should complete his tender on or before said date. The court decreed that the defendant has no right in the land conveyed by deed except as mortgagee, and that the plaintiff has a right to redeem by tendering to the defendant the sum of $3,714.98.

The court further decreed that upon a tender being made to the defendant, as provided in said decree, the defendant should execute and deliver to the plaintiff a quitclaim deed conveying all his right, title, and interest in and to said real estate, and also assign and transfer to plaintiff the stock in the Federal Land Bank heretofore assigned to him by the plaintiff, or in default thereof that he so convey said land upon the payment of the sum of $3,289.98, which tender was to be made by deposit of said sum with the clerk of the court, with notice given to the attorneys for the defendant; that in the event the defendant failed to execute said deed and assign said stock, the clerk of the court was appointed as commissioner for that purpose and was to so execute and deliver to plaintiff the quitclaim deed conveying all the right, title, and interest of the defendant in and to the real estate with the same force and effect as though the same had been done by the defendant in strict compliance with the decree of the court. The costs of the case, in the sum of $131.25, were taxed to the defendant and the clerk was directed to enter judgment therefor. The defendant appeals.

The principal issue in the case is as to the nature and purpose of the transactions between the appellee and the appellant on May 7, 1940, at which time appellee and his then wife executed to appellant a warranty deed to the real estate hereinbefore described and then owned by appellee, and the contemporaneous execution of certain other instruments, which instruments have been designated as Exhibits A, B, and C in the record. The deed then executed is marked Exhibit 19 and is a regular warranty deed, reciting a consideration of $4,330 and other good and valuable consideration paid by J. H. Strohbeen and that Edward G. Moeller and his wife conveyed to J. H. Strohbeen the real estate described therein, such conveyance being subject to a mortgage of approximately $13,000 to the Omaha Federal Land Bank which the grantee assumed. Exhibit A purports to be an option given by J. H. Strohbeen, first party, to Edward G. Moeller and wife, parties of the second part, to purchase said land under the terms and conditions therein expressed, same to be exercised within one year from date and on May 1, 1942, at which time, upon failure of the parties of the second part to exercise said option on or before May 1, 1942, the option was to terminate, and it was expressly understood and agreed that the parties of the second part should have no interest of any kind, class, nature, or description in and to the above-described real estate. This option provided that in order to exercise the same the second parties should pay to first party in cash $6,325, and in addition the balance due on the Omaha Federal Land Bank mortgage, and also an undetermined amount based upon any difference in the market value of 575 shares of stock of the Ohio Oil Company between the date of the option and the time of its exercise by second parties, to which should be added all dividends paid or declared on said stock.

Exhibit B purports to be an agreement between J. H. Strohbeen, first party, and Edward G. Moeller and wife, parties of the second part, wherein the parties of the second part assign to first party all their right, title, and interest in the estate of Charles Moeller, deceased. First party therein agrees not to lease the land conveyed for a longer period than one year and not to execute leases prior to June 15th of each succeeding year, and also agrees to pay the interest, installments of principal,

taxes, insurance, and repairs, and turn over to the parties of the second part any difference between the rent received and expenses paid. Paragraph 4 of said exhibit recites that the parties of the second part warrant that, excepting the Federal Farm Land Bank mortgage, there are no other liens against said land. Paragraph 5 of said exhibit provides parties of the second part shall be responsible for any damages, costs, and attorney's fees, directly or indirectly incurred by first party on account of the option and sale of the real estate and the necessity for the first party to borrow money to purchase the real estate and assume a mortgage of approximately $13,000. It was provided that the provisions of Exhibit B were to terminate in case the parties of the second part exercised the option, and that if they did not it would terminate May 1, 1942.

Exhibit C purports to be an agreement between J. H. Strohbeen, first party, and Edward C. Moeller and wife, second parties, and recites the conveyance of the land and the option agreement, and further, that if the option is exercised in accordance with its terms, Strohbeen was to credit Moeller and wife with the sum of $495.

Briefly stated, appellee claims that due to financial necessity he sought a loan from the appellant; that he tendered as security his farm in which he claimed a substantial equity; that appellant suggested that instead of a mortgage to secure the loan appellee execute to appellant a deed and other instruments to effectuate that purpose; that appellant caused all of the papers to the transaction to be drawn; that such deed was intended to be a mortgage to secure such loan and the purpose and intent of the appellant in having the deed and other instruments so drawn was to secure appellee's farm and also to cover up a transaction wherein usury was being practiced; that later appellee sold the mortgaged premises and sought to repay appellant, but the latter refused to receive the sum tendered, claiming absolute title under the deed.

On the other hand, appellant claims that there was an absolute sale of the premises by warranty deed from appellee to appellant; that at the same time there was given appellee an option to purchase the land; that the assignment by appellee to appel-

lant of his interest in the estate of his father was in the nature of a gift, and that the other instrument was made for the purpose of repaying and protecting appellant for services, costs, expenses, and attorney's fees which might arise out of the whole transaction; and appellant further claims that the appellee has failed to carry out the terms of the various agreements in spite of the fact that appellant has been willing to do so.

Evidently both parties regard the deed and the purpose for which it was made as being the decisive issues in the case. This deed, on its face, contains the provisions which ordinarily go with a warranty deed and it purports to be such an instrument. Since on its face it is an absolute conveyance, the burden is upon the appellee to show otherwise, and in order to do so the evidence must be clear, satisfactory, and convincing. This has been held in many cases. Clark v. Chapman, 213 Iowa 737, 239 N. W. 797; McKenney & Seaberry v. Nelson, 220 Iowa 504, 262 N. W. 101, and many other cases there cited. The trial court held that the evidence showed that appellee went to the appellant for the purpose of securing a loan on his farm. We think the entire record fully sustains this finding. After some delay in the negotiations appellant suggested the giving of the deed. This was prepared by the appellant and at the same time there was prepared the so-called option to appellee whereby appellee might repurchase, also an assignment to appellant of the share of appellee in the estate of his father, and another instrument to save appellant harmless in costs, expenses, and attorney's fees which might arise by the giving of the deed and other instruments. The evidence shows that when the deed was given appellant paid to appellee $3,691.72 in cash and used an additional sum of $623.28 to pay taxes, interest, and other indebtedness on the land. At the time appellant required appellee, in order to secure the loan, to sign an option agreement giving appellee the right to purchase the land back on May 1, 1942, by paying to appellant $6,325, also the balance due on the Omaha Federal Land Bank loan, and the value in excess of $11 per share of 575 shares of stock of the Ohio Oil Company on May 1, 1941, or May 1, 1942, on the New York Stock Exchange, plus all dividends paid or declared on said stock. It is the claim of appellee that the assignment by him of his share in

the estate of his father was further and additional security for the loan, while the appellant claims it was a sort of a gift. The following colloquy between the court and the appellant upon that matter is significant:

"The Court: It is your contention now, while you are on the stand, that this $721.52 has got nothing to do with this deal? He just gave you that? The Witness: Absolutely nothing. * * * The Court: All right. Did Mr. Moeller know he was giving you the $721.00 in the estate when he signed the papers? The Witness: No, I guess he didn't."

However, in argument appellant states that he has no objection to allowing this amount as a credit in case the appellee exercises his option to purchase. The evidence shows that the so-called option was a second draft, the first draft having been unsatisfactory. When the appellant was on the stand giving testimony concerning the drafting and purpose of the option agreement he was interrogated concerning it. He had given testimony as to its being prepared, and then the following questions and answers ensued on cross-examination:

"Q. And you now claim that Kaufmann didn't suggest to you that a contract that provided for a man to have to pay that much money plus all the other trimmings that I won't mention might be considered usurious? You want the Court to understand he never suggested that to you? A. *Until he made out the second agreement,* which would knock out all usury because I had bought the farm direct and was selling it back to him * * *. Q. Now, Mr. Strohbeen, then I'm to understand that the second agreement was drawn for the purpose of avoiding any question of usury, is that right? A. And to pay all attorney expense. Q. Yes. A. In case there was a suit. Q. I see. A. Correct. Q. So the whole question now before the Court is whether this trap is airtight or not, is that right? A. Well, I guess that's up to the Court." (Italics supplied.)

The so-called option agreement is not at all clear and definite and the lower court held that it was void and unenforceable. This finding, we think, has abundant support in the record. The evidence shows that on May 7, 1940, the appellant

paid to appellee the sum of $4,325, of which amount $623.28 was used to pay taxes, interest, and other indebtedness on the farm conveyed. One of the provisions of the option agreement provided that, in order to exercise the same, appellee, among other things, was to pay appellant $6,325, or $2,000 more than had been paid when the deed was executed. The appellee claims that the $2,000 was inserted therein to avoid the laws governing usury. The trial court agreed with him in this claim. We are of the opinion that the circumstances of the negotiations leading up to the making of the instruments in question, the evidence offered on that point, and particularly that given in cross-examination by the appellant, can lead to no other conclusion.

The evidence shows that appellant, in October 1941, came to the office of Attorney Kaufmann; appellee was present, as was also a Mr. Hartman, the trust officer of the Davenport Bank & Trust Company. The parties had met there, according to prior arrangement, to attempt to arrange a settlement of their controversy over the deed and other instruments. Appellant was there advised that Mr. Hartman was there to pay to appellant for appellee whatever amount was due him after deducting credits, to wit, the appellee's share of his father's estate, and net rentals of the farm, etc. Upon demand of the appellant to see the money, $5,000 in currency was counted out, and thereupon appellant declared that he was through and left the office with the remark that he would see him either May 1st or in court. The acts and conduct of the appellant at that time seemed to indicate that he wanted the money if Moeller did not have it but did not want it if he did have it.

Concerning the shares of stock mentioned in the option, appellant admits that he told appellee he was going to sell the stock and figured that he would lose $2,000 in doing so. He said it made no difference whether he pledged or sold. The record shows that the appellant did not sell the stock but used it as collateral to secure a loan. We are of the opinion that the stock transaction as set forth in the option agreement, when viewed in the light of the testimony of the witnesses and bank records, was an attempt on the part of the appellant to secure from appellee payment of an additional $2,000. He did not sell

the stock as claimed. By using such stock as collateral he suffered no loss. As throwing light on the nature and purpose of the option, this agreement makes provision that in the event the stock value exceeded $11 per share on a certain determined date such excess should become the property of appellant. If a profit was contemplated it must have been through the medium of a sale.

The trial court sitting in equity had before it for determination certain ultimate fact questions. We have gone over the record and it is our opinion that the findings of the court are abundantly supported by the record; to have decided otherwise on the record before it would have resulted in the doing of an injustice and inequity and would have allowed the appellant to obtain property as the result of a scheme or device conceived for that very purpose. Equity will not put a stamp of approval upon such dealings.

Having disposed of the principal issue in the case, holding that the deed of May 7, 1940, was not what it purported to be on its face, to wit, a warranty deed, and that it was given as security for money advanced by appellant to appellee, it is unnecessary for us to decide other points urged by appellant relative to the transaction of May 7, 1940, and other matters connected therewith. Holding the deed to be in legal effect a conveyance to secure a loan necessarily results in a finding that there was an obligation upon the part of the grantor to repay the loan. The record shows that appellee sought to do so but was prevented by the actions and conduct of the appellant. The points argued by appellant as to the value of the farm, and his being held personally liable by his assumption of the $13,000 mortgage, require little consideration in the face of the record which shows a cash sale for a sum much in excess of the amount to be paid to appellant and the holder of the mortgage, with the buyer ready to make cash payment of the entire purchase price when the cloud on the title made by the deed to appellant was removed.

Both parties in argument have suggested that since the decree of the trial court further proceedings may be necessary therein. It is stated that the time fixed for making payment has expired, and further, that since that time certain rentals

on the real estate have been collected by the appellant. In view of this situation, it is ordered that the case be remanded and that the trial court take further appropriate action dealing with the matters arising subsequent to the decree, and in addition, fix the time in which payment, tender, and redemption are to be made.—Affirmed and remanded with directions.

All JUSTICES concur.