ELMER E. REUSCH, appellee, v. JOHN SHAFER, EDWIN SHAFER, individually and as administrator of estate of JOHN SHAFER, et al., appellants; STATE OF IOWA and STATE BOARD OF SOCIAL WELFARE, defendants.

## No. 47587.

(Reported in 41 N.W. 2d 651)

MARCH 7, 1950.

S. G. Larson, of Paullina, for appellants.

Roseberry & Pitts, of Le Mars, for appellee.

Charles F. O'Connor, Special Assistant Attorney General, for defendants.

BLISS, C.J.—The facts are the controlling factors in this case. The plaintiff's father died in 1916 .when plaintiff was a minor, and the defendant John Shafer was appointed administrator of the father's estate, and guardian of the plaintiff's property. The guardianship was closed about 1927, and about March 1, 1928, Shafer borrowed $2500 from his former ward, on Shafer's promissory note, without any security. On August 20, 1920, John Shafer and his wife, Johanna, conveyed by warranty deed to his wife a half section of land in O'Brien County, and the residence property in controversy, which is described as the South Half of Block Six of W. B. Morse Addition to the Town of Calumet, in O'Brien County. This deed was not recorded until October 6, 1928. Creditors who had loaned money to Shafer prior to the recording of the deed procured decree setting

aside the transfer with respect to the half section. This court affirmed the decree in Meltzer v. John Shafer, 215 Iowa 785, 244 N.W. 851 (October 25, 1932). It was when sale of this land was attempted under execution issued on the judgment in that case that Judge Bradley and the attorney for plaintiff were subjected to mistreatment by a mob, on April 27, 1933.

John Shafer paid but little on plaintiff's note, and in attempting to get security from Shafer, plaintiff, on March 7, 1931, procured a new note for $2500 due in one year, executed by both John and Johanna Shafer. On December 14, 1931, Shafer and wife conveyed the half section of farm land to a brother of the grantor, A. W. Shafer, trustee, to secure the note held by plaintiff, an indebtedness to the trustee, and a debt owing to Herman J. Warm. On the night of April 26, 1933, John Shafer, A. W. Shafer and Herman Warm induced plaintiff to go to Cherokee County, and there, over plaintiff's protest, but because of the representations of the others that it was his only chance to have his debt paid, he signed a release of the trust deed. Warm and A. W. Shafer also executed the release. The next day, the day of the affair at the courthouse in Primghar, John and Johanna Shafer executed to Herman J. Warm a warranty deed to one half of the half section—the N.E. ¼ of Section 21, Township 94, Range 40. Plaintiff received nothing for the execution of the release.

On May 16, 1934, for a recited consideration of $1, Johanna Shafer, the holder of the title, and her husband, John Shafer, conveyed by warranty deed to John Shafer, the remaining quarter section of land, the N.W. ¼ of Section 22, Township 94, Range 40, and the residence property in Calumet. The deed was recorded the same day. On May 29, 1934, for a consideration of $1, John Shafer and wife, by warranty deed conveyed the residence property to Edwin Shafer and Mrs. Olga Kummerfelt, son and daughter of the grantors. The deed was recorded on February 20, 1935. In consideration of the execution of that deed, the grantees therein, on February 26, 1935, in writing leased said residence property to John and Johanna Shafer, from February 27, 1935, during the lifetime of John and Johanna Shafer or of the survivor of them.

On May 6, 1935, John Shafer and wife conveyed to Edwin Shafer the N.W. ¼ of Section 22, Township 94, Range 40, free of incumbrance except a mortgage thereon of $14,000 to Steele's bank. The grantee has owned and occupied the farm since said conveyance. He had been renting that quarter section and the quarter section conveyed to Warm, from John Shafer for several years prior to the conveyance to him.

On "April—, 1937," Edwin Shafer and wife and Olga Kummerfelt and husband, for a recited consideration of $1, executed a warranty deed conveying the residence property to John Shafer and Johanna Shafer. The deed was recorded on April 30, 1937.

April 10, 1939, plaintiff obtained a judgment on the promissory note held by him against John and Johanna Shafer for $3282.39, with interest at six per cent per annum, and for costs and attorney fees. Nothing has been paid on the judgment.

Johanna Shafer died intestate, leaving no estate, April 9, 1943. She had lived continuously in the residence property with her husband and family since 1916. She was survived by six children and her husband, John Shafer, who continued to live in the property until his death.

On July 1, 1943, John Shafer filed his application for old age assistance with the State Board of Social Welfare, in which he stated that his residence was subject to a judgment lien, and that the property had no value over and above the liens. A search of the records at that time by the Welfare Board disclosed that the only judgment against John and Johanna Shafer was the one of $3282.39 held by plaintiff. His application for old age assistance was approved on October 6, 1943, and notice of the claim to a lien was filed of record on October 15, 1943. Between November 1943 and August 1948, inclusive, John Shafer had received $1486 as old age assistance.

Plaintiff filed petition to establish the lien of his judgment against the residence property July 10, 1948. A little later in that month John Shafer and his children, Edwin Shafer and Olga Kummerfelt, consulted R. J. Locke of the law firm of Locke & Lampman, of Primghar, Iowa, able and reputable attorneys, to represent them in the suit. An answer and an amendment to it were filed by Locke & Lampman, as attorneys for John Shafer and the two children. Late in August 1948 Mr.

Locke called Edwin Shafer to the office and explained to him the law of the case, and asked him what testimony was available to establish the allegations of their answer. Mr. Locke knew that John Shafer had difficulty in talking because of a paralytic stroke, and had all his communications with Edwin. He had several conversations with the latter. On September 2, 1948, he wrote Edwin that Mr. Pitts, attorney for plaintiff, had inquired about the chance of a settlement. Locke stated in his letter that he thought the lien of plaintiff's judgment was ahead of the claim of the Welfare Board. He suggested that Edwin and his sister inquire about what the home would sell for and then talk the matter over with him. He stated that while the Welfare claim would be good as against them it would not be good as against Reusch. On September 18, 1948, Locke wrote to Edwin as follows:

"Dear Sir:

"The court has set the case of Reusch v. Shafer for the 27th of this month. We told the attorney for Reusch that you and your father and sister were not going to fight it. If he gets the judgment then this place will be sold but they will not get possession for over a year so your father can live there for a year and maybe somewhat longer."

Immediately after that letter Edwin Shafer came to Locke's office and told him that he did not want the house, and his wife said she would never live in it, and he also said his sister, Olga, would not come to court. Locke also stated in his affidavit:

"That I then told him that his father being unable to talk and the sister, Olga Kummerfelt, who was one of the grantees in the deed from John Shafer and one of the grantors back to him, would not testify and I did not think we would have any chance of winning; that I also explained to him that I did not think the court would pay much attention to his testimony alone. I asked him to see his sister and see if she would not testify, but he was very emphatic about it that she would not come to court; that I then told him I would talk to plaintiff's lawyers to see if we could not get some concession. I explained that they would have a full year after the property was sold * * * before they would give possession * * * and that I might get that time

extended. We talked about his father's health. Shortly before the time set for the cause to be tried, I communicated with Mr. Pitts and we arranged to meet in my office and we did meet. I telephoned Edwin Shafer to be there and we all met in my office shortly before the time of trial; present at that meeting were Mr. Pitts, Mr. Reusch, the plaintiff, Mr. Goodburn of Marcus, Iowa, Edwin Shafer and myself. In that conversation I told Mr. Pitts, in the presence of Edwin Shafer, that we were not going to make any fight. We also talked that he would have to go ahead with the case as far as the State Board was concerned, and at that time Mr. Pitts orally agreed, in the presence of Edwin Shafer, that he would not have the writ of possession issue until March 1, 1950. Edwin Shafer owns a farm within a half mile of Calumet, and I did not have any reason to believe, during all of the time that I acted as such attorney, but that he was in constant communication with his father and sister; he told me time and again that he did not care for the house, and his sister, Olga Kummerfelt, did not care to have anything to do with the case but all that was wanted was that John Shafer would not be dispossessed. After I had the first conversation with John Shafer, Edwin and Olga, I did not see either John Shafer or Olga Kummerfelt again but assumed that Edwin Shafer, who was quite active in the matter and lived close to them, was representing all three of them. On the day of the trial between the plaintiff and the Old Age Assistance Department I was not in the courtroom but a few days thereafter he [Edwin Shafer] met me in front of the courthouse and wanted to know how much he owed me and I told him we had not been able to do much for him but that we had spent considerable time on it and I charged him $10, which he paid. During the time we had the conference with Mr. Pitts and the plaintiff, at which Mr. Goodburn was present, I had several private conversations with Edwin Shafer in another room in my office."

This affidavit made by Mr. Locke on April 25, 1949, was corroborated by affidavits of Mr. Pitts and Mr. Goodburn, all a part of plaintiff's resistance to motions to set aside the judgment and decree. The conference mentioned by Mr. Locke was on October 25, 1948.

The substance of plaintiff's action as set out in his pleadings was that the residence property was the homestead of John Shafer from 1916 until he made an absolute conveyance of the property and all of his interest in it by his deed in May 1934 to Edwin Shafer and Olga Kummerfelt, and that during the interim between the execution of said deed and the reconveyance of the property by the grantees to John and Johanna Shafer by the deed of "April—, 1937" the homestead-interest and right of John and Johanna Shafer was limited to their leasehold, and that the judgment debt of plaintiff became a valid first lien on the property as soon as it was entered, after the reconveyance to John and Johanna Shafer, and was superior to any lien of the Board of Social Welfare.

The answer of the said Board denied the allegations of plaintiff's petition and alleged the priority of its lien. The answers of John Shafer and his children were that plaintiff's judgment never became a lien on the property since the title in fact was always in John Shafer and the conveyance to Edwin and Olga was only to secure indebtedness to Edwin Shafer.

On October 27, 1948, the day assigned for trial, Mr. Pitts· and plaintiff, as did also Charles F. O'Connor, Assistant Attorney General for the Board of Social Welfare, appeared in court. Mr. Locke appeared for the other defendants and was present about the courtroom and in the attorneys' room where Mr. Pitts and Mr. O'Connor were preparing a stipulation. Mr. Locke took no part in this. When he was asked by Mr. Pitts if he was going to withdraw his appearance or answer, Mr. Locke replied that he would do neither, but would offer no evidence, and that he was then leaving to attend a funeral. This conversation was either to, or in the presence of, Judge Thomas, who stated that he was informed of what was said. Later in the proceeding in a colloquy of the trial court and the attorneys, Judge Thomas said: "Well, I heard Mr. Locke say that he might as well withdraw, but he hasn't formally stated to the court he was withdrawing, but he said he wasn't going to introduce any evidence."

There is some intimation by the Shafers that Mr. Locke was derelict in his duty to them. We find no basis in the record for the suggestion of such a charge.

Mr. O'Connor procured a subpoena for Edwin Shafer and accompanied the sheriff when he served it on Edwin at his farm. Edwin testified as a witness for the Welfare Board. He was cross-examined at length by Mr. Pitts. His only purpose in testifying was to establish that the deed to him and Olga was only to secure a debt of his father to him. His testimony was weak and quite inconclusive on that issue, and it fell far short in quality and quantity of establishing it. In fact, the witness conceded that any debt might well have been from him to his father, rather than from the latter to him.

On January 8, 1949, the court filed its judgment and decree, with findings of fact and conclusions of law as alleged, and as contended for by plaintiff, and granted the relief prayed for by plaintiff. The court found that John Shafer owned an undivided one half of the residence property under the deed of April 1937, and one sixth thereof as his distributive share of the undivided one-half interest which his wife had received under the same deed, and that the six children owned in equal shares the remaining undivided one third of the property. Plaintiff's judgment was established as a lien on the entire property prior and superior to any lien or interest of any and all defendants. The lien of the Social Welfare Board was held to be junior to plaintiff's judgment.

The decree recited the appearance of Locke & Lampman for John Shafer, Edwin Shafer and Olga Kummerfelt. Judgment and decree was entered by default against the nonappearing defendants who were served by publication.

On February 8, 1949, John Shafer, by S. G. Larson, as his attorney, filed a motion to set aside the judgment and decree of January 8, 1949, which motion alleged that John Shafer was eighty-five years old; his hearing and speech were impaired; that he lived in a town of two hundred and thirty population, which had no bank or lawyer, and that he had no automobile; that he had always occupied the property as his homestead; that when plaintiff filed his petition and the original notice was served on John Shafer he consulted R. J. Locke, whom he describes as "a competent, reputable attorney at law engaged in the general practice of law in O'Brien County", and had him prepare an answer to plaintiff's petition; that he did not understand that anything

further was required of him, and he heard nothing further about the case, or its assignment for trial, or that he was required to appear before the court to defend his homestead rights; "that the clerk of the court did not notify the defendant John Shafer or his attorney that judgment had been entered"; and that he did not know anything further about the case until February 2, 1949, when he saw a notice of the sheriff's sale in an O'Brien County newspaper. Just who he meant by "his attorney" is not made clear.

Attached to the motion is an affidavit of John Shafer subscribed and sworn to on February 8, 1949, reciting many of the allegations in the motion. An affidavit of Edwin Shafer stating his lack of knowledge of any court proceedings concerning himself or Olga or his father is also attached.

On February 8, 1949, Judge Rodman set the motion to vacate the decree of January 8, 1949 for hearing on February 16, 1949. Subsequently the defendants William, Ernest and Paul Shafer and Nora Rixman, the nonresident children of John and Johanna Shafer, filed a similar motion to vacate, and later Edwin and Olga did likewise. Olga attached an affidavit that the last she knew about the Reusch case was when Edwin swore to the answer in Mr. Locke's office for himself, her father and for her, on July 28, 1948. The Welfare Board also filed a motion joining in the motion of John Shafer to set aside the judgment and decree.

In his affidavit of February 8, 1949, referred to above, John Shafer stated that he was also plaintiff in a suit commenced by him in O'Brien County against Elmer Reusch and the sheriff· of O'Brien County for an injunction to stop the sheriff's sale of the residence property. This suit was filed on February 8, 1949. It was verified by the affidavit of John Shafer. On the same day John Shafer filed an amendment to this petition which he verified by a two-page affidavit. The restraining order was that day issued by Judge Rodman and hearing on the petition was set for February 16, 1949.

Plaintiff filed resistance on February 15, 1949, to the motions to set aside the decree, and also a motion to discharge the temporary injunction. John Shafer, Edwin Shafer and Olga Kummerfelt were in Judge Rodman's court at Primghar for the two hearings on February 16, 1949, on the petition for temporary in-

junction and the motion to dissolve the injunction. Judge Rodman refused to hear the motion to set aside the decree and thought it should be passed upon by Judge Thomas. When it was suggested that a bond for the injunction should be posted the clients of Mr. Larson refused to do so and dismissed the petition for injunction, and the court entered an order vacating the temporary injunction. Upon the suggestion of the defendants that a settlement be made, Mr. Larson suggested to plaintiff's lawyer that if plaintiff would bid in the property for the full amount of the judgment and costs and give John Shafer permission to occupy the property until September 1, 1950, subject to the condition that plaintiff should take possession if John Shafer died before said date, and subject to redemption rights, the answering defendants would make no contest and would assign the insurance policies to plaintiff. Mr. Larson stated that he thought the nonanswering defendants would acquiesce in this. When the proposed settlement was submitted to plaintiff he agreed to it on condition that the Shafers all quitclaim the property to him. On March 13, 1949, John Shafer died and Mr. Larson then notified Mr. Pitts that he was filing a motion to substitute Edwin Shafer, as administrator for John Shafer, for the deceased as a party. An amendment to the motion of John Shafer to vacate the decree was then filed. In the amendment it was alleged that John Shafer was mentally incompetent. Attached to the amendment was an affidavit by a local doctor who was county coroner, and a member of the O'Brien County insanity commission, stating that after John Shafer had a second stroke in August 1947 "he was not able to comprehend or understand business matters * * * or what a lawsuit was about or comprehend its nature or appreciate its importance or the necessity of giving it attention." It appears quite improbable that two law firms would consult with Mr. Shafer and participate with him in the preparation of pleadings and various court proceedings if he had no comprehension of what was being done.

On May 21, 1949, the court overruled all motions to set aside the judgment and decree of January 8, 1949, except the motion of defendants, served with notice by publication, who were given reasonable time to answer.

On June 16, 1949, all defendants but the State of Iowa and the State Board of Social Welfare appealed from the judgment and decree of January 8, 1949, and the ruling and judgment of May 21, 1949.

The appeal from the first judgment and decree is not timely, but since it is challenged in the motions to set it aside, for the purpose of appeal we will pass upon both judgments.

I. The heart of the appellants' case is in their contention that the deed of John Shafer and wife of May 29, 1934, conveying the residence property to Edwin Shafer and Mrs. Olga Kummerfelt was not, as it purports on its face to be, an absolute warranty deed, without any reservations, limitations or conditions, but was in fact a mortgage given to secure an indebtedness of John Shafer to Edwin Shafer. Just why Mrs. Kummerfelt should have been made a grantee or mortgagee in such conveyance is not shown. There is no claim that John Shafer was indebted to her.

There is no doubt that a warranty deed such as here executed may be shown by parol testimony to have been intended to be in fact only a mortgage and given only for security. We have so held many times, but we have just as often held that the burden to so show is upon the one, claiming that to be a fact, to establish it by clear, satisfactory and convincing evidence. We note a few of these numerous decisions: Brown v. Hermance, 233 Iowa 510, 514, 10 N.W.2d 66; Moeller v. Strohbeen, 232 Iowa 1282, 1289, 8 N.W.2d 254; Ross v. Automobile Ins. Co., 228 Iowa 668, 675, 292 N.W. 813; McKenney & Seabury v. Nelson, 220 Iowa 504, 507, 262 N.W. 101; Hinman v. Sage, 208 Iowa 982, 984, 221 N.W. 472; Cold v. Beh, 152 Iowa 368, 371, 132 N.W. 73. We have said in other cases that "a deed absolute on its face will not be declared a mortgage, except upon proof that is clear and satisfactory." Krebs v. Lauser, 133 Iowa 241, 244, 110 N.W. 443, 444; Langer v. Meservey, 80 Iowa 158, 159, 160, 45 N.W. 732; Robertson v. Moline Milburn-Stoddard Co., 106 Iowa 414, 415, 76 N.W. 736; Jones v. Gillett, 142 Iowa 506, 511, 118 N.W. 314, 121 N.W. 5; Knight v. McCord, 63 Iowa 429, 430, 19 N.W. 310. In Betts v. Betts, 132 Iowa 72, 75, 106 N.W. 928, 929, the court said:

"To deprive a deed, which is absolute in form, of its character as a full and effective conveyance, and to convert it into a security, requires something more than a doubtful showing or an uncertain preponderance of the evidence. We must start with the presumption that the instrument is what it purports to be; and, although the presumption is not conclusive, it is to be overcome only by proof which is reasonably clear and satisfactory."

Other of our decisions call for still greater proof. Speaking of an absolute conveyance which it was contended was a mortgage, the court, in Corbit v. Smith, 7 (Clarke) Iowa 60, 61, 71 Am. Dec. 431, said:

"To establish such an agreement, his proof should be clear, satisfactory, and conclusive, and not be made up of loose and random conversations with respondent. * * * Indeed, all parol testimony against the answer of a respondent, to establish a trust, or to make a conveyance, absolute upon its face, a mortgage, should be clear, and even then received with great caution."

See also Ensminger v. Ensminger, 75 Iowa 89, 90, 39 N.W. 208, 9 Am. St. Rep. 462; Kibby v. Harsh, 61 Iowa 196, 198, 199, 16 N.W. 85. In Bradford v. Helsell, 150 Iowa 732, 735, 130 N.W. 908, 909, the court said:

"A deed purporting to convey absolute title will not be held to be a mortgage only, unless the evidence is so clear and satisfactory as to leave no doubt that the real intention of the parties was to execute a mortgage."

This quotation is repeated in Maytag v. Morgan, 208 Iowa 658, 666, 226 N.W. 93.

But one witness testified in support of the contention of the defendants that the deed was given only to secure a debt of John Shafer to Edwin Shafer. That witness was Edwin Shafer. We have already noted the indecision of the witness and the inconclusive character of his testimony on this issue. He was not at all certain whether his father was his creditor or his debtor. He gave no testimony as to any debt owing him by his father or the amount of it. On this point, we said in Hinman v. Sage, supra, 208 Iowa 982, 984, 221 N.W. 472, 473: "A prerequisite universally recognized is the existence of a debt, or obligation to pay, on

548

the part of the grantor." The same thought is expressed in Shanda v. Clutier State Bank, 220 Iowa 290, 296, 260 N.W. 841. Of the necessity of establishing the debt, the court, in Clark v. Chapman, 213 Iowa 737, 743, 239 N.W. 797, 800, said:

"An important burden of proof rests upon the appellants at this point. Only clear and ·satisfactory evidence can be accepted to warrant the conversion of a warranty deed into.a mortgage security. It was incumbent upon the defendants to prove in such manner: (1) That the consideration for the warranty deed was an existing indebtedness, together with the amount of such indebtedness; and (2) that such indebtedness was not extinguished by the conveyance, but was kept alive."

 The trial court found that defendants failed to establish this affirmative defense by evidence of the weight and character required. Weight must be given to this finding, particularly because of its advantage in passing upon the veracity of the witness and the credibility of his testimony. We have no hesitancy in holding that under the record and the evidence the defendants not only failed to meet any of the high standards fixed by our decisions for measuring or determining the probative value of the evidence, as above set out, but they failed to produce evidence that was of greater weight.

There are other circumstances that give strong support to this conclusion. Plaintiff, in his petition, alleged that Johanna Shafer died intestate on April 9, 1943, at which time she and John Shafer were owners and tenants in common of the residence property, and that by reason of her death intestate, John Shafer, was seized of an undivided two-thirds interest in the property and the children-defendants were seized of the remaining undivided one-third interest therein. The defendants in their answer to said petition admitted these allegations. By such admissions John Shafer and Edwin Shafer and Olga Kummerfelt admitted that the warranty deed of May 29, 1934, conveyed to Edwin and Olga absolute title to the residence property, and admitted that their warranty deed of April 1937 conveyed absolute title to the property to John and Johanna Shafer as owners and tenants in common thereof. Were this not so Johanna would not have had an undivided one-half interest in the property at her death.

John Shafer owned the property and held title thereto when he executed the deed to Edwin and Olga on May 29, 1934. Had that deed been but a mortgage their deed of April 1937 would have been but a release of that mortgage and would have restored full title in John Shafer. The only title which the children had in the property when plaintiff filed his petition came to them through their mother which she received under the deed of Edwin and Olga in April 1937. Plaintiff in his printed argument states the proposition thus:

"Johanna Shafer secured her title to a half interest in said premises by the conveyance from Edwin Shafer and Olga Kummerfelt, through whom those answering defendants claimed in the trial court, but they are now claiming they took no title from Johanna Shafer, and that the reconveyance was solely for the purpose of releasing security, and did not convey title to John Shafer and Johanna Shafer. They ignore the fact that John Shafer held title in 1934 when the first conveyance was made, and the so-called reconveyance was not made to him but to John Shafer and Johanna Shafer through whom the answering defendants were claiming until they changed counsel."

On February 26, 1935, Edwin and Olga executed a lease of the residence property to John Shafer and wife, which stated: "The consideration of said lease to be that the parties of the second part [the lessees] *have heretofore deeded the said premises to the parties of the first part* [Edwin and Olga]." (Italics ours.)

During the period from May 29, 1934, to April 1937 while Edwin and Olga held title they paid all taxes on the property. Edwin testified that the reason the property was reconveyed to his parents was to take advantage of the homestead tax exemption.

The deed of May 29, 1934, from John Shafer to the two children contained no reservation or limitation. Under section 557.3, Code of 1946, it passed all interest of the grantor therein to the grantees. During the interim between the delivery of these two deeds the ownership and title to the property was in Edwin and Olga. John and Johanna Shafer had a homestead right under their lease only, but not in the real property itself for they did

not own it. When it was conveyed back to them the new homestead right which they thereby acquired became instantly subject to the lien of the plaintiff's antecedent judgment.

The judgment and decree of January 8, 1949, and the ruling and judgment and decree of May 21, 1949, of the district court are both affirmed.—Affirmed.

All JUSTICES concur.